FIDELIA S. LOSCH, as Administratrix de Bonis Non of the Estate of GEORGE B. ONGLEY, Deceased, Appellant and Respondent, v. MAX MARCIN et al., Respondents and Appellants.

(Argued June 4, 1929; decided July 11, 1929.)

*Martin W. Littleton* for plaintiff, appellant and respondent. The order of the Appellate Division appealed from erroneously allowed to Marcin compensation to be paid by the estate of Ongley alone because of services rendered by Marcin after Ongley's death. (*Greenslete* v. *Ferguson,* 191 App. Div. 745; *Consaul* v. *Cummings,* 222 U. S. 262.)

*Max Levy* for Max Marcin, defendant, respondent and appellant. The basic finding that the contract had not

terminated was substantial legal error. (*Spalding* v. *Rosa*, 71 N. Y. 40; *Sargent* v. *McLeod*, 209 N. Y. 360.) The refusal to find repudiation and abandonment are basic and substantial errors of law. (*Cahill* v. *Haff*, 248 N. Y. 377; *King* v. *Leighton*, 100 N. Y. 386; *Stem* v. *Warren*, 227 N. Y. 538; *Stewart* v. *Robinson*, 115 N. Y. 328; *Conn. Bank* v. *Weldon*, 148 Cal. 601.)

*William S. Andrews* and *Nathan Burkan* for Al. H. Woods, defendant, respondent and appellant. The findings do not support the interlocutory judgment. (*Sargent* v. *McLeod*, 209 N. Y. 360; *Burnell* v. *Chown*, 69 Fed. Rep. 993; *De Witt* v. *Manufacturing Co.*, 66 N. Y. 459; *Nillson* v. *Lawrence*, 148 App. Div. 678; *Klein* v. *Beach*, 232 Fed. Rep. 240; *Osborn* v. *Schenck*, 83 N. Y. 201; *Meinhard* v. *Salmon*, 249 N. Y. 458; *Williams* v. *Whedon*, 109 N. Y. 333; *Costello* v. *Costello*, 209 N. Y. 252; *Matter of Nesersmith*, 140 N. Y. 609; *Stem* v. *Warren*, 227 N. Y. 538; *Smith* v. *Ogilvie*, 127 N. Y. 143.) As a partner Marcin was entitled to reasonable compensation for winding up the affairs of the firm. (*Cahill* v. *Haff*, 248 N. Y. 377.)

KELLOGG, J. The plaintiff is the administratrix of the estate of George Booth Ongley, a playwright. The defendant Marcin is a playwright, while the defendant Al. H. Woods is a theatrical producer. The recovery sought is chiefly an accounting for a share of the profits received by the defendants from the production of a theatrical play, alleged to have been written, in whole or in part, by George Booth Ongley, and to have been owned by him.

The complaint alleges that on the 20th day of January, 1915, Ongley and the defendant Woods entered into a contract in writing, a true copy of which is set forth in Exhibit A, attached to the complaint. That document recites that Ongley is about to write a play entitled "Birds of a Feather," and that Woods desires to secure

a license to produce it. Ongley grants to Woods the exclusive right to produce the play in the United States and Canada. Woods agrees to pay to Ongley, upon the signing of the contract, the sum of $500 on account of royalties to accrue. Ongley agrees to deliver the play to Woods not later than April 1, 1915. Woods agrees that the initial performance will occur not later than April 1, 1916. Royalties are to be paid by Woods to Ongley upon all gross weekly receipts. The name of Ongley is to appear on all advertisements, announcements and programs as the author thereof. Other engagements, not material here, are entered into.

Continuing, the complaint alleges that in accordance with the terms of the contract, Woods paid to Ongley the sum of $500; that thereafter, on the 29th day of January, 1915, Ongley and the defendant Marcin entered into a contract in writing, a true copy of which is set forth in Exhibit B attached to the complaint. That document recites that Ongley is about to write an original play entitled " Birds of a Feather; " that he has granted to the defendant Woods the exclusive right to produce it; that Ongley desires to secure the services of Marcin as collaborator; that Marcin is desirous of becoming thus associated. The parties agree to become associated " in the originating and writing and ownership of an original play " entitled " Birds of a Feather," and to devote their best efforts to the attainment of that end. Ongley transfers to Marcin a one-half interest in the contract between himself and the defendant Woods, and agrees to secure the written consent of Woods to the association of Marcin with himself in originating and writing the play. Other engagements not material here are entered into.

Continuing, the complaint alleges as follows: In satisfaction of the terms of the contract, Ongley paid to Marcin $250, one-half the sum received from Woods; the defendant Woods had full knowledge of the contents

of Exhibit B at the time of the making thereof; Ongley procured the consent of Woods that Marcin should be associated with himself; Ongley and Marcin collaborated in writing the play referred to in Exhibits A and B; Ongley died on the 23d day of October, 1915; the play had not at the time been entirely completed; thereafter Marcin or some other person unknown to the plaintiff, completed the play referred to in Exhibits A and B; the defendant Woods on or about the 1st day of August, 1916, produced the play referred to in such exhibits under the title " Cheating Cheaters; " he has continued the production and presentation thereof at all times; he has advertised the defendant Marcin as the sole author; the defendants, since the initial production of the play, have received gross receipts therefrom in excess of $350,000; they are continuing to receive substantial sums on such account; " Cheating Cheaters " is the same play as the one referred to in Exhibits A and B as " Birds of a Feather; " the plaintiff after the death of Ongley was duly appointed administratrix of his estate; the plaintiff, prior to the first production of " Cheating Cheaters," notified the defendants not to produce it without advertising Ongley as the author; the plaintiff demanded an accounting from the defendants; the demand was refused.

The complaint demands judgment that plaintiff is the owner of " Cheating Cheaters; " that the defendants account for the moneys received from its production; that defendant Woods be enjoined from paying any profits to the defendant Marcin; that the defendant Marcin be enjoined from receiving any of the profits; that the defendants be enjoined from claiming authorship or ownership of the play.

The defendants, by their answers, admit that the contracts A and B were entered into; that Woods consented that Marcin collaborate with Ongley in writing " Birds of a Feather; " that Woods produced a play entitled

" Cheating Cheaters; " that he advertised Marcin as the sole author thereof. Otherwise, except as to minor matters, they deny the allegations of the complaint, and particularly the allegation that Ongley conceived the plot of " Cheating Cheaters " or had any part in its writing.

The issues drawn were tried before a referee who made a decision finding all the facts to be as alleged in the complaint. In addition, the referee found the following: Ongley and Marcin, acting in collaboration, had reduced to writing, prior to the death of Ongley, the first act and one-half of the second act of " Birds of a Feather; " the defendant Marcin, in April or May, 1916, after the death of Ongley, delivered to the defendant Woods the manuscript of a completed play called " Birds of a Feather; " the plot of this play was the plot and idea conceived and originated by Ongley; Woods accepted the completed manuscript from Marcin with full knowledge that its central idea and plot were the same as that of the play which Ongley had agreed to write; the defendants changed the title from " Birds of a Feather " to " Cheating Cheaters; " the defendants " connived and co-operated in producing the play " as the original conception of the defendant Marcin, and as the result of his individual labor; the defendants Marcin and Woods entered into a written agreement on May 4th, 1916. The agreement is set forth in the findings and recites that Marcin is the sole author of " Cheating Cheaters; " that Woods desires to acquire from Marcin the exclusive right to produce it; that Marcin is desirous that Woods should have this exclusive right. It grants to Woods the exclusive right to produce " Cheating Cheaters." Woods is to pay upon the signing of the contract $500 and thereafter royalties upon all gross weekly receipts arising from the production, payable in the same amounts and on the same terms and conditions as had been agreed upon in the contract between Ongley and Woods. Marcin covenants and warrants that the play has been originated,

created and written by himself; that he is the sole and exclusive owner of the same; that no other person has any right therein. Other stipulations, not material here, were contained in the contract. The findings also set up another agreement entered into by Marcin and Woods on May 16, 1916. Marcin again recites that he is the sole and absolute owner and author of " Cheating Cheaters." He assigns to Woods, for a sum stated, an undivided one-half interest in and to all royalties to be paid for the use of the play. He also transfers to Woods a seventy-five per cent interest in the motion picture rights to said play. Later Marcin sells to Woods all his share in the moving picture rights of the play.

The referee found as conclusions of law that the contract between Ongley and Woods, dated January 20, 1915, was " not a contract for the personal service of said Ongley, but is a contract to write and deliver a play and it was not abrogated by the death of said Ongley; " that " time was not of the essence of the contract " between Ongley and Woods; that Woods, " by accepting and producing the play '·Birds of a Feather,' after the expiration of the time expressed in the contract for its delivery, waived the limitation as to the time of delivery; " that Ongley and Marcin " became and were engaged in a joint adventure in the writing of the play referred to; " that Marcin " appropriated the play 'Birds of a Feather,' claiming sole authorship thereof;" that Woods " with full notice and knowledge of the rights and interests of the plaintiff," in violation thereof " connived and co-operated with the defendant Max Marcin in appropriating and producing the play ' Birds of a Feather ' as ' Cheating Cheaters ' and as the sole creation and literary work of the defendant, Max Marcin, and in advertising said Max Marcin as sole author of said play and paying him all the royalty accruing from the production thereof; " that " the defendant Max Marcin had no right, title or authority to sell, transfer

or assign to the defendant, Al. H. Woods, the play 'Birds of a Feather,' or any interest therein and exclude the plaintiff from participation therein as the representative of the deceased Ongley."

There followed, on the heels of the decision by the referee, several interlocutory judgments. Pursuant to these judgments accountings were had between the parties. Subsequently, there was entered a final judgment, which, as modified by the Appellate Division, adjudged that the defendants pay to the plaintiff, on account of royalties arising from the production of the play " Cheating Cheaters " the sum of $29,165.72, with interest, less $9,721.91, with interest, allowed to defendant Marcin for additional services performed by him in completing the original play " Birds of a Feather." The judgment enjoined the defendant Woods from paying to the defendant Marcin any royalties from future productions of the play, and from advertising the name of Marcin as the sole author of the play. It required Woods in all advertisements of future productions to name both Ongley and Marcin as the authors.

It appears from Exhibit B, attached to the complaint, is found and not disputed that Marcin and Ongley became joint adventurers in originating and writing the play entitled " Birds of a Feather." As partners, they became the joint owners of the contract, Exhibit A, which had been executed by Ongley and Woods, as well as joint owners of the manuscript of " Birds of a Feather," so far as the same had been written prior to the death of Ongley. When Ongley died, Marcin, as surviving partner, took title to the contract and to the incomplete manuscript. Towards all the world, except the estate of Ongley, Marcin became the absolute owner thereof; had full power of disposition, by sale or otherwise, over either document; and became empowered to receive all payments which might be made under the Woods contract, or might be owing from a sale of the manuscript, whether

completed by him or remaining incomplete, or from a letting of any rights for the production of the play. (*Daby* v. *Ericsson*, 45 N. Y. 786; *Williams* v. *Whedon*, 109 N. Y. 333; *Costello* v. *Costello*, 209 N. Y. 252.) Nevertheless, in a court of equity, Marcin, when he became surviving partner, assumed the character of a trustee for the estate of his dead partner (*Case* v. *Abeel*, 1 Paige, 393; *Joseph* v. *Herzig*, 198 N. Y. 456); and, at the instance of the estate, was subject to an accounting for all the partnership assets received by him. (*Russell* v. *McCall*, 141 N. Y. 437; *Simpson* v. *Simpson*, 197 N. Y. 586.) Therefore, in whatever aspect the complaint is viewed, since the allegation is made and the fact found that Marcin, as surviving partner, received from partnership assets certain moneys, either in satisfaction of the Woods-Ongley contract or in payment of an independent letting of the firm manuscript, it is clear that the plaintiff, representing the estate of the deceased partner, was entitled to an accounting, and to the recovery, upon such an accounting, of the moneys which have been adjudged her due. We think also that Marcin was entitled to the allowance made to him for his labor in completing the play and no more.

As against the defendant Woods, there is difficulty in determining whether the case attempted to be stated is grounded in contract or in tort. Assuming it to be the former, we think the complaint is insufficient. The contract, Exhibit A, entered into by Ongley and Woods, engaged Ongley to write a play entitled "Birds of a Feather." Undoubtedly, the undertaking of a particular author to write and deliver a certain dramatic piece, be the author George Bernard Shaw or George Booth Ongley, will not be satisfied by the delivery of a writing composed by the litigious but illiterate Richard Roe. (*Sargent* v. *McLeod*, 209 N. Y. 360.) True, in this instance, the contract was modified to permit Marcin to collaborate with Ongley in writing the piece. Yet, a

play to be written by Ongley and Marcin is not a play which Richard Roe may have written. The complaint does not allege that "Birds of a Feather," as a completed play, was written by Ongley, or by Ongley and Marcin. It alleges that it was not entirely completed at Ongley's death; that thereafter Marcin "or some other person completed the play;" that a play so completed was produced by the defendant Woods. Moreover, the play to be written by Ongley, or by Ongley and Marcin, was to be delivered to Woods on or before April 1st, 1915. It is not alleged that it was so delivered; in fact, no play was delivered until more than one year after the date agreed upon. It is said that the defendant Woods, in accepting "Cheating Cheaters," waived the point that it may not have been written by Ongley or Ongley and Marcin, or that it had not been delivered on the contract date. The burden rested upon the plaintiff to allege performance by Ongley of the obligations cast upon him by the Woods contract, or an excuse for non-performance, in order that a recovery upon the obligations entered into by Woods might rightfully be asserted. The plaintiff did neither. She did not assert that "Cheating Cheaters" was written by Ongley and Marcin, or delivered on or before April 1st, 1915. Neither did she assert that the manuscript of that play was accepted by Woods in satisfaction of his contract with Ongley. Again, the complaint fails to assert that Woods was ever guilty of a breach of his contract with Ongley in failing to pay royalties to him or his estate. In fact, by implication, it asserts the very converse. Thus it appears from the complaint that Ongley and Marcin were partners; that Marcin became the surviving partner of Ongley and as such entitled to receive all royalties payable under the contract with Woods. It is asserted that Marcin and Woods have received all the profits from the play's production. Presumably then Marcin has received the royalties due him, and the contract obligation has been satisfied.

Moreover, if Woods has indeed broken his contract with Ongley, in no event would the plaintiff have been entitled to an accounting against him. He was not an agent of Ongley or the plaintiff, nor was he a trustee of property held in trust. At most, he was a simple debtor and as such not liable to an accounting. (*Schantz* v. *Oakman*, 163 N. Y. 148.) We think that a right of action, grounded upon a breach of the Ongley-Woods contract, has not been stated.

If we assume that the case attempted to be stated against Woods is grounded in tort, we think that the complaint is likewise insufficient, in that the commission of no wrong by the defendant Woods has been alleged. The nearest approach to the statement of such a wrong is made by paragraph IX. It is there asserted that Marcin, or some other person unknown to this plaintiff, completed the dialogue of the play; that the defendant produced the play under the title " Cheating Cheaters; " that he has advertised Marcin as the sole author of the play. It is inferable from these allegations that Woods produced the play, after obtaining the right so to do from Marcin. There is no charge that Woods appropriated the play to his own use, misappropriated, converted, or wrongfully produced it. Now, Marcin, as we have seen, had the sole right, as surviving partner of Ongley, to sell or license the play to Woods. If Woods became the owner or licensee through a transaction with Marcin, he was under no obligation, unless Marcin so stipulated, to advertise Ongley as the author, in part or in whole, of the manuscript of the play. Marcin had the right, within reason, to name the terms of the sale or lease to Woods, and if he did not stipulate that Ongley should be advertised, that omission did not constitute a wrong, either on his part or the part of Woods. In passing upon the sufficiency of the complaint the Appellate Division has said that Woods " in conjunction with the defendant Marcin has appropriated the play." (180 App. Div. 685, 690.)

This phrase has been many times repeated in court opinions which have dealt with the subject. True, Marcin and Woods appropriated the play. Why not? Marcin had the title; Woods took title from Marcin. They had the right to " appropriate " the play, to take it to themselves. The word has no sinister meaning. Moreover, neither the word " appropriate " nor " misappropriate " is employed in the complaint. Perhaps Marcin did misappropriate the proceeds of the play. Neither he nor Woods would have been guilty of a wrong if expressly charged with having " appropriated " the play itself.

We have seen that Marcin, upon his survivorship of Ongley, became the owner of the incomplete manuscript of " Birds of a Feather; " that, in a sense, he was a trustee of this asset of the partnership for the benefit of the estate of Ongley, his deceased partner. There are cases which hold that where a trustee vested with full power to sell, makes a sale of trust property with the intention of misappropriating the proceeds of the transaction, a buyer, having knowledge of the intended conversion, is equally liable with the trustee for the wrong subsequently committed. (*Field* v. *Schieffelin*, 7 Johns. Ch. 150, 155; *Colt* v. *Lasnier*, 9 Cow. 320; *Sacia* v. *Berthoud*, 17 Barb. 15.) If such were the facts alleged, and found in this instance, we might hesitate to say that the plaintiff was without a cause of action against Woods for an accounting in reference to the trust property received by him. We have already shown that no such case has been alleged. We think it has not been found.

. The contracts entered into between Marcin and Woods and the transactions between them were not set up in the complaint. They first appear in the findings. It is found therein that Woods accepted the play " Birds of a Feather " from Marcin, " with full knowledge that its central idea or plot was the same as that of the play which George Booth Ongley had contracted to write and deliver to him." Even so, Woods had the right to buy the play

from Marcin as surviving partner. It is further found that Woods " with full notice and knowledge of the rights and interests of plaintiff and her intestate, wrongfully and in violation of said rights and interests, connived and co-operated with the defendant, Max Marcin, in appropriating and producing the play." Even here there is no charge that Woods purchased or leased the play knowing that Marcin would misappropriate the proceeds received, or with the purpose of enabling Marcin to accomplish that wrongful result. Moreover, there is no support for the finding that Woods then knew of the rights of the plaintiff. In January, 1915, he had known that Ongley was to write a play " Birds of a Feather," and that Marcin was to collaborate with him in its composition. But that play had not been completed on contract time. More than a year elapsed before the play was offered him by Marcin and Marcin guaranteed that the play was his own property. Woods may have thought that Marcin had bought from the Ongley estate its rights to the incomplete manuscript, or he may well have thought that Marcin, having written two-thirds of the manuscript in order to complete it, as a matter of law was entitled to claim ownership of a property which, without Marcin's labor, as an incomplete play, would have been wholly valueless. In this view Woods did not knowingly participate in a wrong intended to be committed by Marcin after selling or leasing the play. If Woods, in making the purchase or lease, was entirely within his rights, he was entitled to stand upon the terms of his bargain with Marcin, and thereafter to make payments of all royalties to him.

We think that under the complaint the plaintiff was not entitled to an accounting from Woods; that a case for an accounting was not made by the findings; that judgment for a sum of money or any other relief should not have been entered against him.

The judgment of the Appellate Division and that of the Special Term should be affirmed, without costs as to the

defendant Marcin and reversed as to the defendant Woods, and the complaint, as to him, dismissed, with costs in all courts.

CARDOZO, Ch. J., POUND, LEHMAN and O'BRIEN, JJ., concur; CRANE and HUBBS, JJ., concur except as to the reversal, as to which they dissent.

Judgment accordingly.