C. W. FLOYD COFFIN, SOLE SURVIVING EXECUTOR OF THE LAST WILL AND TESTAMENT OF HARRIET D. COFFIN, DECEASED, PETITIONER-PROSECUTOR, v. WILLIAM D. KELLY, STATE TAX COMMISSIONER, RESPONDENT-DEFENDANT.

Argued October 6, 1943—Decided February 21, 1944.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and COLIE.

For the petitioner-prosecutor, *Morrison, Lloyd & Morrison* (*William J. Morrison, Jr., Francis V. C. Lloyd* (*M. S. Hottenstein* and *Jacob Mertens, Jr.,* of the New York bar), of counsel).

For the respondent-defendant, *David T. Wilentz,* Attorney-General of New Jersey (*William A. Moore,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. In December, 1935, Mrs. Harriet D. Coffin transferred personal property amounting to $734,488, which was practically her entire estate. There was transferred to her grandchildren by two deeds of trust the sum of $659,488; the balance to her two sons and some near relatives. Four years later she died, testate; her estate then amounted to $14,500. The State Tax Commissioner, after the death of the donor, imposed inheritance taxes on these transfers. On appeal to the Prerogative Court Vice-Ordinary Jayne affirmed the assessment of taxes (133 *N. J. Eq.* 188). Her will had been executed more than twelve years previously to the transfer, that is, in January, 1923. By this instrument her estate was left to her husband and in the event that he had predeceased testatrix (which was the case) then to her two sons equally. A codicil was executed in December, 1938, which left unchanged the previous plan of distribution. At the time the transfers were made Mrs. Coffin's husband, Joel C. Coffin, had been dead for approximately nine months.

The pertinent statute, *R. S.* 54:34–1 (c), ordains that a

tax, according to statutory schedule, shall be imposed upon the transfer of property of the value of $500 or over, or of any interest therein or income therefrom in trust or otherwise to or for the use of any transferee, distributee or beneficiary when the transfer is made in contemplation of the death of the grantor, vendor or donor or intended to take effect in possession or enjoyment at or after such death. It is further provided that if a transfer be made without adequate valuable consideration and within two years prior to the death of the grantor, vendor or donor of a material part of his estate or in the nature of a final disposition and distribution thereof, it shall, in the absence of proof to the contrary, be deemed to have been made in contemplation of death within the meaning of the statute. This presumption, however, may be overcome by proof to the contrary. To determine the question in the case—whether the taxes were lawfully imposed on these transfers—the intention of the donor. and her underlying motive must be ascertained. Intention is always an issue of fact and necessarily must be arrived at from all the facts, circumstances and conditions that obtained at the time of the transfers. And this is a matter that in many cases is not without its perplexities.

The executors prosecute this writ and resist the tax urging that under the facts, circumstances and conditions of this case the transfers were gifts *inter vivos,* not made in contemplation of death or in lieu of testamentary disposition and therefore not taxable; that the Tax Commissioner did not discharge the burden of proof which was undoubtedly his under the statute, the gifts having been made more than two years prior to the death of the donor; that the donor at the time of the transfer was a vigorous, alert woman who at the time enjoyed good health.

A son of the decedent, Mr. Floyd Coffin, testified that his mother first mentioned her intention to make gifts to her grandchildren in October or November, 1935. At that time, according to the witness, his mother "expressed considerable disappointment" that her husband, who had died in March of that year (and whose estate in the normal course had not yet been distributed) had made no provision in his will for

their grandchildren which she thought "he should have done prior to his death." And, further, that she "wanted to make up for that oversight." Under the will of her deceased husband (whose estate amounted to $3,000,000) Mrs. Coffin enjoyed a life estate in the real property and was entitled to have "such portions of the net income" from the personalty as she might require for "her maintenance, health and personal comfort and pleasure *after she will have used for the same purposes all of the income received by her from her own property and investments* after my decease." (Italics supplied.) This condition was imposed by Mr. Coffin, Sr., with complete knowledge of the quality and size of his wife's separate estate. That this is the fact is not debatable. His beneficence had created her separate estate, according to the testimony. By these transfers in 1935, it is plain that Mrs. Coffin virtually divested herself of her entire estate. In the normal course her accustomed requirements and maintenance called for an expenditure of from $30,000 to $40,000 each year. At the time of her death there remained a sum in her estate insufficient to maintain the donor, at this rate, for half a year. True it may be that she retained part of her separate estate and used it for maintenance after the year 1935. If this was the fact, it does not appear. Or it may be that the income from her husband's estate was made available to her after 1935 without regard for the condition imposed by the testator. The fact that these transfers were made about nine months after her husband's death is not without significance. In the normal course the executors had the duty to prepare inventories, obtain waivers and anticipate tax returns and accountings. The filing of inheritance tax returns for the scrutiny and analysis of the state and federal departments, necessarily created a tax atmosphere of which no one in interest was not conscious.

Another circumstance should be mentioned. By the deeds of trust the enjoyment by the beneficiaries of the transfers was postponed for a period beyond the normal expectancy of life of the donor. This plan and its implications is discussed by the learned Vice-Ordinary (*Coffin, &c.,* v. *Kelly, supra*) and need not be restated here.

It is suggested by the appellants that the Tax Commissioner did not sustain the burden of proof. We think it was amply sustained. The testimony of the several witnesses, the exposition of the financial situation of the donor, the transfers which resulted in the almost total disposition of the donor's estate, and the general fact situation that obtained, the donor's life estate under her husband's will providing for her maintenance and care, with the attaching conditions, all lend credibility and force to the inference that the donor knew that she need not be concerned about the conditions imposed in her husband's will and support if indeed they do not compel the conclusion that the transfers were in the nature of a final testamentary disposition and were made in contemplation of death. Such is our finding.

The decree under review is affirmed.