[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 55 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 56 
This is an appeal from a determination of the Director, Division of Taxation, Department of Taxation and Finance (hereinafter referred to as Director), (1) assessing a transfer inheritance tax against certain inter vivos transfers made by the decedent and (2) increasing the value of the decedent's partnership interest in Schneider Mills, bequeathed to his widow, Anne Schneider, by adding thereto a value of "good will" as an asset of said partnership business.
Decedent, Samuel Schneider, died testate on May 29, 1944. Under the terms of his will, decedent bequeathed $5,000. to each of his children, Isadore, Albert and Martha, and his residuary estate to his wife, Anne Schneider, who survived him. Appellant filed a transfer inheritance tax report, indicating a net taxable estate of $78,659.33. The Director computed the net taxable estate to be the sum of $499,602.91. The increase is represented by (1) the Director's determination that the transfers by the decedent to his sons Isadore and Albert Schneider, on January 3, 1941, of a one-twelfth interest and a *Page 57 
one-third interest respectively in Schneider Silk Mills, and the transfer of a one-twelfth interest in the Mills to Anne Schneider, on January 3, 1942, were made in contemplation of death and (2) a determination by the Director that one of the assets of Schneider Silk Mills was "good will", and that it had a value of $328,495.32. The Director's valuation of the good will increased the taxable value of the business of Schneider Silk Mills to $650,179.04.
The inter vivos gifts in question were made more than two years prior to the death of decedent and hence no presumption arises under the statute that they were made in contemplation of death. The Director concedes that he must, therefore, assume the burden of establishing that the transfers were made in contemplation of death. Appellant contends that the transfers were not in contemplation of death, but were complete and unconditional when made and are, therefore, not within the purview of R.S.
54:34-1c. The Director argues that appellant's contention conflicts with the evidence and the reasonable inferences to be drawn therefrom; that a logical and reasonable appraisal of the facts and circumstances here under consideration supports the Director's determination, to wit: that the transfers were in contemplation of death and motivated by decedent's intent to make such transfers in possession and enjoyment after his death.
To determine whether the decedent made the transfers in contemplation of death makes necessary an inquiry into the decedent's state of mind as evidenced by his actions and the facts and circumstances surrounding the transfers. The transfers not having been made within the prescribed period, "Therefore, no artificial statutory presumption arises that they were made in contemplation of death. However, a transfer is not necessarily to be regarded as free from the tax merely because it was accomplished beyond the specified period. The legality of the tax levy in either circumstance must be determined in view of the peculiar facts of the given case." Squier v. Martin,131 N.J. Eq. 263 (Prerog. 1942). The decedent was the sole owner of Schneider Silk Mills at the time of the transfers. His wife, the appellant, contends that she *Page 58 
was possessed of a half interest therein, but the testimony to that effect is not persuasive. At the time of the transfers, decedent was approximately fifty-one years of age and died at the age of fifty-four years. The only testimony as to his state of health at the time of the transfers was furnished by members of his family, who testified that he enjoyed good health and continued to do so until December, 1943, when he relaxed his business activities under directions of his doctor to "slow up and take it easy". The cause of his death was acute myocarditis. The Schneider Silk Mills represented practically all of decedent's assets and the transfers constituted approximately two-thirds thereof. Appellant contends that the motivating reason for making the transfers was to persuade their son, Albert, to undertake a course in "textiles" at a southern college so that he might qualify himself for active participation in the business; that Albert was disinclined to do so, but finally consented to follow his father's counsel when it was proposed that the father form a partnership and make a gift of a one-third interest therein to Albert. This was accomplished in January, 1941, by decedent transferring a one-twelfth share to his son Isadore, and one-third to Albert. Albert's share was held in the name of decedent as trustee, because of Albert's minority. Subsequent to the formation of the partnership, Mrs. Schneider testified that she began thinking about the new partnership arrangement, reaching the conclusion that she should have had an equal share therein. As a consequence of her demand, a formal partnership agreement was executed on January 3, 1942, and Mrs. Schneider was admitted on an equal basis with her husband and two sons. Decedent transferred one-twelfth of his interest in the partnership business to his wife, recaptured a one-twelfth share previously given to his eldest son, Isadore, and arbitrarily reduced the share held in trust for his son, Albert, by one-twelfth thereof, which he also transferred to his wife. Thereafter, each partner had a one-quarter interest in the business. The partnership agreement provides, inter alia, that "said partnership shall be managed and carried on * * * and directly handled and negotiated by either or both of the said first (Samuel Schneider) *Page 59 
and second (Isadore Schneider) parties". (Parentheses ours). And further, that "the profits of the said partnership of Schneider Silk Mills, * * * shall be divided into such proportions as shall be directed by the first party, * * *". The authority of the decedent to direct the division of profits, under the agreement, is subject to the following limitation: "in no event shall the proportion of profits to which each of the second, 3rd, and 4th parties shall be entitled, be less than one-fourth of the profits of any fiscal year or calendar year * * *". It is also significant that decedent executed his will on July 9, 1941. Appellant contends that, because of decedent's age and good health at the time of the transfers and his absolute and complete transfer of the respective shares of the partnership business, they were erroneously assessed by the Director. She points also to the fact that no share was given to the daughter, Martha, who was a minor, as additional proof that the transfers were not in contemplation of death, asserting that Martha was his favorite child, and yet, so far as the record discloses, decedent only bequeathed her the sum of $5,000. under his will. He made similar bequests to his sons, Isadore and Albert. The taxability of the transfers is not determined solely by the age and good health of the transferor, as was held in the case of Schweinler v.Thayer-Martin, 117 N.J. Eq., at p. 79 (Prerog. 1934):
"That contemplation of death which results in testamentary disposition is so well known as scarcely to need definition or description. It is a man's considered reflection that death is certain to come eventually, even though not anticipated as likely to occur until a distant time; that when death does come he can no longer protect, support or benefit those who are near and dear to him or to whom he owes some duty in that behalf, and he will then have no further possibility of making any gifts for public or charitable purposes; that when death does come his estate will inevitably pass to someone else; that it would be a wise and provident thing for him now, before death does come and prevent any such action on his part, to make provision for the passing of his estate to those whom he desires to have and enjoy it after his death and to make provision for the support, protection or benefit of those for whose support, protection or benefit he wishes to provide — with, of course, further consideration as to beneficiaries, and nature and amounts of testamentary gifts." *Page 60 
"The manifest object of the statute is to tax testamentary and intestate transfers and also inter vivos transfers which are in fact makeshifts employed to effectuate a purpose normally accomplished by will." Squier v. Martin, supra. "The statute envelopes all transfers which in reality are substitutes for testamentary dispositions." Squier v. Martin, supra, and cases therein collated. Appellant contends that to subject the transfers to inheritance tax, the burden is on the Director to prove that they were made by the decedent in the belief or apprehension of approaching death. This is not the rule in this State and the courts have held to the contrary. Barillet v.Kelly, 131 N.J.L. 140, 146 (Sup.Ct. 1944). The facts and circumstances here persuade us that the objective which the decedent had in mind at the time of the transfers was to effectuate a testamentary disposition of his estate. We summarize the factors which have influenced us in reaching this conclusion as follows: the transfers in question were without valuable consideration; they represented a major part of decedent's property; they were made to members of his family for whom he had always provided financial sustenance and they did not, therefore, make any substantial change in his economic position; his arbitrary recapture of one-twelfth of Albert's share which he held as trustee; the execution of his will on July 9, 1941, his continued domination of the business enterprise and his control over the proportionate division of the profits of the business. The reasonable and logical inferences to be drawn from the foregoing facts and circumstances spell out a motivation to make a testamentary disposition of decedent's estate. Coffin v.Kelly, 133 N.J. Eq. 188 (Prerog. 1943); affirmed131 N.J.L. 241 (Sup.Ct. 1943); affirmed 133 N.J.L. 252(E. A. 1945).
We think that the Director was justified in increasing the value of the share of decedent in the partnership business which he bequeathed under his will to his wife by adding thereto his calculated value of good will thereof as an asset. Appellant contends that this action of the Director was erroneous and not justified by the facts, that the partnership business had no good will to which a value could be attached, *Page 61 
arguing that the business was of a hazardous character and that its success was based upon the peculiar qualities and executive ability demonstrated by the decedent, his wife and sons, and that "their combined executive talent was the cause of success". There is no testimony, however, that subsequent and attributable to decedent's death there was any loss of earnings by the partnership business, nor was such a claim made by appellant before the Bureau. Respondent contends that the partnership business possessed the asset of good will and that the value of the business must be "in excess of the appraised value of the actual physical assets of the business and such excess value has been taken, over and above a fair return, as the value of the good will as an additional asset". The Schneider Silk Mills realized net profits of $119,571.45, $125,045.96 and $200,318.52 respectively for the years 1941, 1942 and 1943, being the years immediately preceding the date of decedent's death. Appellant argues that the partnership business had no value other than the appraised value of its physical assets, ignoring the fact that during the three years mentioned, the business earned an average profit of $148,311.97. It is obvious that a sale of the business earning such a sizable profit would realize a much greater sum than the appraised value of its physical assets. While appellant does not attack the value of the asset of good will as computed by the Director, her complaint is that the business had no good will whatever as an asset thereof. The Director computed the value of the good will according to established practice and method approved by our courts. The method adopted was to ascertain the yearly profit realized by the business, averaged over a period of years known as the "years purchase", then, allowing for a fair return — 6% on the average capital invested — the excess, multiplied by the number of "years purchase" is taken as the value of the good will of the business. This method of appraisal was approved in the case of In re Hall, 94 N.J. Eq. 398(Prerog. 1923); modified 99 N.J.L. 1 (Sup.Ct.
1923); affirmed 100 N.J.L. 405 (E. A. 1924). There is no question that good will is an asset of any business. In reBottomley, 92 N.J. Eq. 202 (Prerog. 1920); In re Hall,supra; In re Deutz, 105 N.J. Eq. 671 (Prerog. 1930). We *Page 62 
think that there was sufficient evidence to support the Director's determination that the partnership business did possess good will as an asset thereof, and that the assessment made against the interest therein passing under decedent's will to his widow was warranted.
The judgment of the Director is affirmed.