36 N.J. Super. 185 (1955)
115 A.2d 119
GUSSIE BLUT, AS EXECUTRIX UNDER THE LAST WILL AND TESTAMENT OF ISAAC BLUT, DECEASED, PLAINTIFF-APPELLANT, AND CROSS-RESPONDENT,
v.
BENJAMIN KATZ AND HERMAN MARKS, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 1955.
Decided June 3, 1955.
*187 Before Judges CLAPP, JAYNE and FRANCIS.
*188 Mr. Harry Chashin argued the cause for plaintiff-appellant (Messrs. Marcus & Levy, attorneys; Mr. Hyman W. Rosenthal on the brief).
Mr. Harry Nadell argued the cause for defendants-respondents.
The opinion of the court was delivered by CLAPP, S.J.A.D.
This action was brought by the executrix of Isaac Blut against his two surviving partners for, among other things, an account as to his interest in the partnership. The defendants have continued the business, acknowledging, it is said, an obligation to pay plaintiff whatever is found to have been the value of Blut's interest as of his death. From a judgment awarding her a sum for the value of this interest, she appeals.
We deal with two points. The trial court held that the partnership estate is not a "fund in court" (R.R. 4:55-7(b)) from which a fee may be allowed her attorneys. This raises the first point. The other point has to do with the valuation of the partnership's good will: she by her appeal claims it undervalued in certain respects, and defendant surviving partners through a cross-appeal say it was overvalued in certain respects. Further as to this litigation, see Blut v. Katz, 13 N.J. 374 (1953).
The ruling of the trial court with respect to the matter of attorneys' fees was, we think, clearly proper. But at the risk of restating the obvious, we shall look back over the cases of the present Supreme Court on the matter.
The mere fact that, through some proceeding, a fund is subjected to the court's disposition, does not expose the fund to the allowance of fees. No fee was allowed in Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 496 (1952), where an illegal purchase was rescinded and injunctive control taken over a fund. The court noted that the action was not brought for the benefit of a class of which the plaintiffs were representatives. In what cases, then  of those wherein a court subjects a fund to its disposition  may an allowance be made from it?
*189 The usual case is one where a party (sometimes a fiduciary or a cestui que trust, but others are comprehended), acting for the benefit of a number of persons, undertakes a judicial proceeding in the interest of a fund, to protect, recover, increase it or adjust rights in it. It is but fair that these persons bear their share of the expense of that proceeding.
Upon this basis, an allowance may be made, under familiar and settled practice, for the protection of the fund through "an accounting" by a fiduciary and a passage of his accounts  or for the adjustment of rights in a fund through the "construction" of a will, where the creator of the fund, the testator, through a doubtful will, has brought down on his estate the litigation. Katz v. Farber, 4 N.J. 333, 344 (1950). See too In re Koretzky's Estate, 8 N.J. 506 (1951), where the beneficiary sued for the removal of an executor; Milberg v. Seaboard Trust Co., 7 N.J. 236 (1951), abstracted in the Driscoll case, 8 N.J., at page 495.
Upon the same basis, also, an allowance may be had in an action for interpleader, Farley v. Manning, 4 N.J. 571, 576 (1950), or in an action to adjust rights of parties in a fund deposited with the court "subject to the rules of court." Katz v. Farber, 4 N.J. 333 (1950), abstracted in the Driscoll case, 8 N.J., at page 495. However, a plaintiff cannot put his attorney in line for a fee by paying money into court with a view to establishing that it belongs, not to the defendant, but to himself; he is acting only for himself. Janovsky v. American Motorists Ins. Co., 11 N.J. 1 (1952).
But there are unusual cases which rest upon a somewhat different basis. Thus an allowance may be made in an action instituted by one in a quasi-fiduciary position on behalf of the sole beneficiary or owner of the fund, where the fund is recovered or preserved. United States v. Equitable Trust Co. of New York, 283 U.S. 738, 51 S.Ct. 639, 75 L.Ed. 1379 (1930) (an allowance made to an attorney for the next friend of an incompetent), abstracted in Katz v. Farber, supra, 4 N.J., at page 342, and in State v. Otis Elevator Co., 12 N.J. 1, 11 (1953).
*190 Another unusual situation arises in an action for the escheat of personal property wherein an allowance may be made to defendant's and plaintiff's attorneys not only on the usual basis above stated, but also on another basis. Here the State, which is proceeding for the recovery of a fund, calls upon the defendant to assist it in the process. Again, as in the above cases, a party (here the defendant) has conferred in the nature of a quasi-contractual benefit on another (in this case the plaintiff) who has an interest in the fund; that is to say, his attorney renders legal services on the fund's behalf in the very action of account which subjects the fund to the court's control. State v. Otis Elevator Co., 12 N.J. 1, 12, 19, 21 (1953).
There are or may be other bases upon which R.R. 4:55-7(b) may be invoked. As to cases in other jurisdictions, see Note, Allowance of Attorneys' Fees from a Fund in Court, 35 Col. L. Rev. 740 (1935). But  without undertaking in any way to lay out an all-engrossing criterion  we may say that the present case is clearly not within the compass of such philosophies as these.
It is true that in the case of a partnership the surviving partners or partner is in some measure a fiduciary for the estate of the deceased partner and accountable as such to his estate with respect to all assets of the partnership. Andrews v. Stinson, 254 Ill. 111, 98 N.E. 222, 225 (Sup. Ct. 1912); Jackson v. Jackson, 343 Ill. App. 31, 98 N.E.2d 169, 176 (App. Ct. 1951); Malden Trust Co. v. Brooks, 291 Mass. 273, 197 N.E. 100, 105 (Sup. Jud. Ct. 1935); Phillipson v. Phillipson, 302 Mich. 84, 4 N.W.2d 477, 479 (Sup. Ct. 1952); Losch v. Marcin, 251 N.Y. 402, 167 N.E. 514, 516 (Ct. App. 1929); 68 C.J.S., Partnership, § 285, p. 785; 40 Am. Jur. 342.
But plaintiff seeks a fee, not out of moneys recovered (nor out of moneys which were deposited by defendants with the court to avoid a receivership and which have now been paid over to her on account of her judgment), but out of the defendants' shares in the partnership. She has rendered no benefit to the entire partnership estate. She has not *191 attempted to preserve or perform any service for defendants' shares; nor has she in any way, directly or indirectly, acted for defendants' benefit. Indeed, the issue is directly controlled by what we had to say in Long v. Mertz, 21 N.J. Super. 401, 404 (App. Div. 1952).
As to the second question, namely, the valuation of good will, it is first to be noted that the parties here accept the formula employed below, and we therefore confine our attention to that formula. For the federal estate tax practice with respect to the valuation of closely held businesses, see Estate Tax Handbook, edited by J.K. Lasser (1951), 386-404; see also the formula once commonly relied on, A.R.M. 34, 2 C.B. 31, 32 (1919). In general as to the valuation of good will, see Tracy v. Alexander, 17 N.J. 397 (1955); Milberg v. Seaboard Trust Co., 7 N.J. 236, 242 (1951); 53 Col. L. Rev. 660, 696 (1953); 47 Journal of Accountancy 429 (1929); 64 Id. 28 (1937); 31 Neb. L. Rev. 559 (1952). Some courts seem to have rejected a formulistic approach to the matter. Com'r of Corporations and Taxation v. Ford Motor Co., 308 Mass. 558, 33 N.E.2d 318, 139 A.L.R. 936 (Sup. Jud. Ct. 1941). The problem presented by franchise taxes is a somewhat different one, as they often have to do with more stable enterprises. 2 Bonbright Valuation of Property 732 (1937).
Our own cases dealing with the transfer inheritance tax have made use of the formula accepted here. Stated very briefly, this formula consists in: (1) averaging net earnings over a period of years; (2) deducting a normal percentage (in New Jersey cases 6% has been employed) of the average value of certain net assets (exclusive of good will); (3) multiplying the excess by a factor which will be discussed later. In re Hall's Estate, 94 N.J. Eq. 398, 407 (Prerog. 1923), approved 99 N.J.L. 1 (Sup. Ct. 1923), affirmed 100 N.J.L. 405 (E. & A. 1924); Schneider v. Zink, 2 N.J. Super. 53, 61 (App. Div. 1949). Our inheritance tax cases in this respect have followed the practice of the New York Surrogate's Courts (see New York Transfer Tax Regulations, 1926, Art. 47, spelling out the formula  that tax was superseded *192 in 1930) which in turn seem to have developed the formula from that employed in the English practice. See Mellersh v. Keen, 28 Beav. 453, 54 Eng. Rep. 440 (Ch. 1860), allowing one year's purchase of the net annual profits averaged over three years.
Under the first step of this formula we must determine what should constitute net earnings. From earnings there should be deducted (inter alia), not salaries actually paid partners, nor drawings agreed upon, but a fair salary for services rendered. 2 Bonbright, Valuation of Property 729; 10A Mertens, Federal Income Taxation 78 (1948); 47 Journal of Accountancy 429, 442 (1929); N.Y. Transfer Tax Regulations (1926) Art. 47. $95 a week fixed for each of the partners here in 1925 is in our view not a fair salary for the services rendered in 1949. Defendants sought to establish that appropriate compensation for each partner would come to 5% of gross sales  that is, on an average of about $11,500 per annum during the four years used in the computation. However, under the circumstances, we conclude, $175 a week would represent a fair salary for each active partner.
On the other hand, Blut was ill and did not contribute his services to the business during those four years. His salary of $95 a week, which the partnership paid him during so long an illness, would not be regarded by a hypothetical buyer as a reasonably foreseeable expense of the business chargeable to good will. This item, we think, should have been eliminated.
From net earnings there should also be deducted, in our view, such reasonable charitable contributions as could under present day practices be looked upon as a business expense. Cf. A.P. Smith Mfg. Co. v. Barlow, 13 N.J. 145 (1953). Here the contributions increased from $681 in 1946 to $1,870.20 (adjusted) in 1949. These figures clearly include personal donations. We will allow $500 a year.
In completing the first step of the formula, the court below rightly, we think, under the circumstances here averaged the net profits for the four years, 1946 to 1949, inclusive. *193 This omitted three of the more profitable years, 1943 to 1945, which plaintiff wanted to have included; but it included one of them, 1946, which defendants wanted to have omitted. The law seeks here a period of years which would afford our hypothetical buyer a reasonable basis for forecasting the future. Paul, Federal Estate and Gift Taxation, § 18.30 (1942); Estate Tax Handbook 397; 10A Mertens, supra, 79-82; 2 Bonbright, 729; 53 Col. L. Rev., at 702; Schneider v. Zink, 2 N.J. Super. 53, three years used; In re Hall's Estate, 94 N.J. Eq. 398, 408, approved 99 N.J.L. 1, affirmed 100 N.J.L. 405, supra, three years; In re Deutz' Estate, 105 N.J. Eq. 671 (Prerog. 1930), three years; Crell v. Kelly, 134 N.J. Eq. 593 (Prerog. 1944), five years, mod. 132 N.J.L. 450 (Sup. Ct. 1945); Corry v. Passaic Nat. Bank and Trust Co., 3 N.J. Super. 569 (Ch. Div. 1949), five years.
The only other question is as to the factor to be used in the third step of the formula. If earnings attributable to good will average $X, how many times (this is the factor of which we are speaking) X would a purchaser pay for the good will? The factor usually runs from 1 to 10. The trial court used a factor of two. This, the most delicate operation in the computation, is the point where the formula loses all semblance of mathematical certainty.
In deciding upon this factor, we must take cognizance of the risks and the prospective stability of the business. Here, on the one hand, it will be noted we have a business that had achieved for a quarter of a century some measure of success. On the other hand, as pointed out by the trial court, there had been a decline in profits generally speaking over the last eight years, the business was highly competitive in nature and its success was due almost entirely to personal efforts of partners who had been with it 28 years before Blut's death.
Our inheritance tax practice is indicated in the cases: a factor of 3 was used in In re Hall's Estate, 94 N.J. Eq. 398, supra, Schneider v. Zink, 2 N.J. Super. 53, supra, and In re Deutz, 105 N.J. Eq. 671, supra. But the circumstances there were different. Bonbright has said a factor of *194 3 was adopted most frequently in New York inheritance tax practice and apparently was regarded there as least in need of justification. 2 Bonbright 731. However, higher factors are generally used in federal tax practice. Estate Tax Handbook, 393-399; 10A Mertens 82; 2 Paul 1291; 2 Bonbright 734, 1061. We think a factor of 3 would be proper here.
Upon this basis, Blut's one-third interest in the firm's good will is fixed at $21,781.45 at his death. See schedule appended to this opinion.
Modified. No costs.

 BLUT, KATZ and MARKS, partners trading as
 UNITED SHOP CAP COMPANY
 1946 1947 1948 1949
 (Adjusted
 to 12 mos.)
Net profit as per
 balance sheet ............ $59,520.98 $30,575.07 $12,186.19 $11,425.69
Add: Partners'
 drawings ............... 13,530.00 15,105.00 14,820.00 14,706.00
 Charitable
 contributions .......... 681.00 1,464.62 1,521.50 1,870.20
 __________ __________ __________ __________
Total ...................... $73,731.98 $47,144.69 $28,527.69 $28,001.89
 ========== ========== ========== ==========
Deduct: Fair salaries for
 partners (2 partners at
 $175 a week for 52
 weeks .................. $18,200.00 $18,200.00 $18,200.00 $18,200.00
 Charitable
 contributions .......... 500.00 500.00 500.00 500.00
 6% of net assets
 (exclusive of good
 will), as found by trial
 court .................. 4,017.30 4,432.56 3,511.58 3,518.99
 __________ __________ __________ __________
Net profit ................. $51,014.68 $24,012.13 $6,316.11 $5,782.90
 __________ __________ __________ __________
 Average net profit ....... $21,781.45
 Multiplied by 3 to find
 good will .............. $65,344.35
 Blut's one-third share of
 good will .............. $21,781.45