ORA E. BARILLET ET AL., PROSECUTORS, v. WILLIAM D. KELLY, STATE TAX COMMISSIONER OF NEW JERSEY, ET AL., RESPONDENTS.

Submitted October 5, 1943—Decided January 17, 1944.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutors, *Endicott & Endicott* (*Allen B. Endicott, Jr.,* and *Daniel J. Dowling,* of counsel).

For the respondents, *David T. Wilentz,* Attorney-General (*William A. Moore,* of counsel).

The opinion of the court was delivered by

PERSKIE, J.  This is an inheritance tax case.  The question for decision on the facts of this case is whether the transfer of a gift *inter vivos* of $85,000 in cash made by decedent to his wife, within two years of his death, was taxable as a gift made in contemplation of death or as a gift intended to take effect in possession or enjoyment at or after such death within the meaning of the then applicable statute.  *Pamph. L.* 1909, *ch.* 228, *p.* 325, § 1, *Third,* as amended by *Pamph. L.* 1935, *ch.* 90, *p.* 264, § 1, *Third,* now *R. S.* 54:34-1-c.

*Pamph. L.* 1909, *supra,* as amended by *Pamph. L.* 1935, *supra,* approved March 25th, 1935, and made effective immediately, imposes a state tax, with exceptions not here involved, "* * * upon the transfer of any property real or personal, of the value of five hundred dollars ($500) or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or * * * in the following cases: Third. When the transfer is of property made by a resident * * * by deed * * * or gift made in contemplation of the death of the grantor * * * or donor, or intended to take effect in possession or enjoyment at or after such death. Every transfer by deed * * * or gift made within two years prior to the death of the grantor, * * * or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof and without an adequate valuable consideration, shall in the absence of proof to the contrary be deemed to have been made in contemplation of death within the meaning of this section."

Decedent transferred by gift the sum of $85,000 in cash to his wife (now Ora E. Barillet) on December 10th, 1935. He died on November 18th, 1936. The State Tax Commissioner held that the gift was taxable within the meaning of the statute of 1935, *supra,* and levied the tax thereon accordingly. On appeal, the Prerogative Court affirmed the holding by the State Tax Commissioner. On application of prosecutors, a single justice allowed a writ of *certiorari* to review the propriety of the stated holdings.

1. We too think that the gift was correctly held to be taxable within the meaning of the statute. The dispositive test of the taxability of a gift *inter vivos,* within the meaning of the statute, is the "motive" of the donor underlying the gift. *Moore* v. *Martin,* 125 *N. J. L.* 189; 14 *Atl. Rep.* (2d) 482. If the "determinative motive" of the donor was "of the sort which leads to a testamentary disposition" of a material part of his estate, if the "generating thought of death" as distinguished from "purposes associated with life" was his "impelling" or "controlling" motive which induced the disposition of the property, if the gift was in fact made as a "substitute for testamentary disposition (*Perry* v. *Mar-*

*lin,* 125 *N. J. L.* 46; 14 *Atl. Rep.* (*2d*) 266; *Central Hanover Bank and Trust Co.* v. *Martin,* 129 *N. J. L.* 127; 28 *Atl. Rep.* (*2d*) 174; *affirmed,* 319 *U. S.* 94; 87 *L. Ed.* (*Advance Opinions.*) 914; *Cf. Squiers* v. *Martin,* 131 *N. J. Eq.* 263; 24 *Atl. Rep.* (*2d*) 865, and cases therein collated), or if the gift was made "for the purpose of an evasion of transfer tax liability by the donee" (*MacGregor* v. *Martin,* 126 *N. J. L.* 492, 497; 20 *Atl. Rep.* (*2d*) 427), then the gift was correctly held to be taxable, otherwise it was not taxable.

The application *vel non,* however, of the stated principles is necessarily controlled by the particular facts of each case that is under consideration and determination. *Scheider* v. *Martin,* 124 *N. J. L.* 567; 12 *Atl. Rep.* (*2d*) 678; *MacGregor* v. *Martin, supra* (at *p.* 496).

Thus we turn to the facts. Decedent, hereafter referred to as donor, was born on February 8th, 1865. At the time of the gift (December 10th, 1935), he lacked about two months of being seventy-one years old; at the time of his death (November 18th, 1936) he lacked about two and two-thirds months of being seventy-two years old, and the gift was made within one year of his death.

Donor had been married to his wife for about twenty years and they lived in a beach front hotel in Atlantic City, New Jersey. He left a gross estate of $394,912.09. The taxability of this sum is not in issue. To this sum, however, the State Tax Commissioner added the cash gift of $85,000 (originally reported as $85,317) to donor's gross taxable estate. The taxability of this additional sum is in dispute.

It is conceded that the donor was in good health not only at the time of the gift to his wife but also up and until five days prior to his death when he sustained fatal injuries as the result of an automobile accident. Prior to his death he had retired from active business and lived his life accordingly. He traveled with his wife, during the last ten years of his life, to Europe where they lived six months of the year. While in Atlantic City, where he spent the remaining six months of each year, he took frequent walks on the Boardwalk, frequented his club in Philadelphia, drove his automo-

bile several times weekly between Philadelphia and Atlantic City, a few times a year between Baltimore and Atlantic City, and twice during the year preceding his death between New York and Atlantic City. Only two hours before his fatal accident, donor told his wife to purchase a home in Baltimore where she and he could retire "in our old age to a home in the country." The wife testified that donor "always claimed he was going to live to be ninety-three" because "his family had all lived to be of very old age." Conditions of health and age of donor are material but not necessarily determinative factors. But whether donor was or was not "in life's late afternoon" (*Cf. Voorhees* v. *Kelly,* 130 *N. J. L.* 61, 64; 31 *Atl. Rep.* (2*d*) 404), we are entirely in accord with the late learned Vice-Ordinary Buchanan that the proofs negative a finding that the "impelling" cause of the donor of the gift was in contemplation of "actual imminence" or "probability" of death in the not distant future.

2. The gift having been made within one year of the death of the donor, prosecutors were obliged to sustain the "burden of establishing"—*Perry* v. *Martin, supra* (at *p.* 51), that the gift was not otherwise made "in contemplation of death" within the meaning of the statute. We think that prosecutors have failed to discharge their burden of establishing that the gift was not intended to take effect in possession or enjoyment at or after donor's death.

Financially, the donor was a man of relative affluence. At the "peak market" of 1929 his stocks and holdings had a probable value of about "one million dollars." At the nadir point of the 1932 market, his stocks had "depreciated, probably 40 to 45%." He was concededly "afraid" of the further decline in the value of his securities because of the resultant consequences of "labor" disturbances and of "inflationary" trends. After consultation and consideration how best to take care of what he had left he became "annuity" minded.

In 1933 he had purchased four life annuity policies (nonparticipating) for a consideration of the single payment of $26,231.25 for each policy. By the terms of each policy the insurer agreed to pay donor, as annuitant, during his lifetime, the sum of $3,000 annually, in equal monthly installments of $250.

In 1935 donor sold securities having a value of approximately $117,000. Additionally, he received the sum of $100,000 from a partnership in repayment of some investment or contributions which he had made to it. So it is estimated that, as of December, 1935, his cash and his securities had the probable worth of $400,000 to $450,000. The gift of $85,000 is a material part of either sum in dollars or percentage.

When donor made the gift to his wife he explained to her that he intended to purchase more annuities and "requested" or "wanted" her to invest the $85,000 in annuities for herself. But his wife, for reasons hereafter stated and analyzed, concluded to, and did, on December 16th, 1935, purchase a single payment life policy of insurance from The Prudential Insurance Company of America on the life of the donor in the amount of $100,000 for the consideration of a single premium payment of $85,317, which she paid to the company, using the $85,000 which she received from the donor.

On the same day, December 16th, 1935, donor also purchased for the consideration of the single payment of $24,683 a life annuity policy from The Prudential Insurance Company by the terms of which the company agreed to pay him, as annuitant, during his lifetime $2,796.12 annually in equal monthly installments of $233.01.

Additionally, and finally, on the same day, December 16th, 1935, donor purchased for the single payment of $90,000 a special life annuity policy (apportionate death benefit) of the Equitable Life Assurance Society by the terms of which the company agreed to pay donor $5,791.44 annually in monthly payments of $482.62 (preceded by a first annuity payment of $723.39) and further agreed to pay, on death of donor, the sum of $45,000 as a death benefit to his wife. No assessment has been levied on this alleged transfer of $45,000 and the power of the state to tax this sum is not in issue in this case.

It is stipulated, as the result of proofs first developed by depositions taken and returned with the writ, that the date on each application for the purchase of the aforesaid policies from The Prudential Insurance Company is not "February 7th, 1935," as appears thereon, but that the correct date is

"December 7th, 1935." And it is further stipulated that the donor could have purchased his annuity policy from The Prudential without his wife having purchased the $100,000 policy from the same company but that the policy which the wife purchased could not have been purchased by the donor or his wife without the concurrent purchase by the donor of his annuity policy, and that no physical examination of the donor was required before the issuance of the policy to the wife.

With these proofs in mind, let us analyze the reasons given by the wife for not having purchased an annuity as requested by her husband. She says that she was too young (forty-three) to buy an annuity. Perhaps she too was of the mind that donor (almost seventy-one years old) had reached "life's late afternoon." But be that as it may she further said that donor "did not have enough money to warrant his living as he wanted to live" and thus she concluded it would be "perfectly all right" for her to buy a "life" insurance policy and to "have a little money left to help him out." The type of securities embraced in the gross taxable estate of the donor and the proofs otherwise adduced completely negative her explanation of donor's inability to live thereon as he might have wanted to live. Moreover, she had nothing left of the $85,000 with which to "help [donor] out." She spent all of that sum plus $317 to purchase the policy. In further explanation, she said, "I wanted to buy insurance rather than an annuity and have some money left." What she meant, in our opinion, was that she wanted to have some money "left" after he died. That was the plan and the gift to the wife was but a means to that end. The wife could not, as we have seen, have purchased her policy without the concurrent purchase by the donor of his policy. Both signed their respective applications at the same time, December 5th, 1935. Thus the wife had made written commitment for the disposition of the $85,000 five days before it was in fact received by her.

By the same token, there is no basis for the suggestion that the gift was to enable the donor's wife to become accustomed to manage a large sum of money. Nor do the proofs support the further suggestion that the gift was in anticipation of a

Christmas and twentieth wedding anniversary present to her. Donor was not "accustomed to make large gifts" to his wife. *Wimpfheimer* v. *Martin,* 126 *N. J. L.* 502, 504; 20 *Atl. Rep.* (*2d*) 433. His wife admits that he had not made a large gift to her for "over ten years" prior to the gift in question.

It is further suggested that the gift should not have been taxed because, we are told, the United States Board of Tax Appeals released it from any federal tax either as a gift made in contemplation of death or as a gift intended to take effect in possession or enjoyment at or after the donor's death. Strictly, that information is not properly before us. It appears only in the affidavits used on the application for the writ. The evidential force of these affidavits expired with the granting of the writ. *Randolph* v. *Woman's Club of Bloomfield,* 127 *N. J. L.* 49, 53; 20 *Atl. Rep.* (*2d*) 324. At all events, there is nothing before us to indicate that the proofs before that tribunal were the same as those which are presently before us.

Donor's motive is clear. He desired to provide an assured income for and during his life, an income which would sufficiently provide for his needs and necessarily for those of his wife. Hence he purchased life annuities. He desired further to provide a fund which upon his death would enable his wife properly to take care of herself. She concurred. Hence they concurrently purchased the Prudential policies. And if it could have been argued that the wife under her policy could have obtained the cash surrender value therein stipulated, then the answers are at least two fold, first, she could not have obtained any cash surrender value thereunder until the policy had been in force at least for one year, and secondly, there is no proof that such was the intention. The gift was not an "outright" and "consummate" one made for the "immediate needs and enjoyment of the [wife] * * *." *Cf. Voorhees* v. *Kelly,* 132 *N. J. Eq.* 230, 233; 28 *Atl. Rep.* (*2d*) 61.

The proofs in our opinion establish that the gift was intended to and did take effect in possession or enjoyment at or after donor's death. We so hold. These conclusions find further support in the will of the donor. On February 20th,

1936, the donor and his wife simultaneously rewrote and executed their wills. The donor's will, save as to a bequest of $10,000 to a nephew, who apparently had served the donor well, was "practically the same" as his prior will. It shall serve no useful purpose to detail its provisions. Suffice it to observe that by the terms thereof, so far as is here pertinent, he bequeathed the sum of $25,000 in cash to his wife, directed that the residuary estate be held in trust for her during her life, gave her the power of appointment over the remainder thereof, and directed that she should be privileged to have 50% of the residuary estate invested in a life annuity. Extra the provisions of the will, the wife received $45,000 from the Equitable Assurance Society policy and she also received, after the death of the donor, for her then use and enjoyment, as planned with her co-operation, the sum of $100,000 under The Prudential Insurance Company policy.

The writ is dismissed, with costs.