IN THE MATTER OF THE INHERITANCE TAXES ON THE ESTATE OF FRANCIS A. HALL, DECEASED.

Argued May 26, 1923 —Decided December 18, 1923.

1. The name under which a business has been established and is carried on is not the sole constituent of "the good-will" of that business.
2. The relinquishment of an option to acquire the good-will of a business is not a transfer of property within the meaning of section 1 of the amendment of 1914 to the Collateral Inheritance Tax act.

On *certiorari*.

Before GUMMERE, CHIEF JUSTICE.

For the prosecutors, *McCarter & English* and *Otto C. Wierum* (of the New York bar).

For the state, *Thomas F. McCran,* attorney-general, and *William Newcorn,* assistant attorney-general.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The writ in this case was allowed for the purpose of reviewing a decree of the Prerogative Court, affirming an inheritance tax, assessed by the comptroller of the treasury, upon the transfer of his business, including the good-will thereof, by Francis A. Hall, to his sons; the assessment being based upon a finding that this transfer was made by him in contemplation of death. On the appeal to the Prerogative Court it was contended that this finding was not justified by the fact, and that, for this reason, the tax should be set aside. It was further contended that, even if the transfer was so made, the tax was invalid, so far as it was based upon the theory that the transfer of the business included the good-will thereof and that this good-will added to the value of the property transferred. It was also contended that, even if the good-will was an integral part of the property transferred, and, so taxable, the valuation placed upon it was excessive. Vice Ordinary Buchanan, before whom the appeal was heard, reached the conclusion that each one of these several contentions was without merit, and, as a result of that conclusion, advised a decree affirming the tax *in toto*.

On the argument before me the same grounds are relied upon in support of the contention that the decree of the Prerogative Court should be reversed. As to the first point: I concur in the view of the Vice Ordinary that the proofs justify a finding that the transfer of the business, which took place on May 23d, 1919, was made by Mr. Hall in contemplation of his death, which occurred on June 18th, 1919, and, so, is taxable under the third subdivision of section 1 of the act of April 9th, 1914, amending our act for the taxation of the transfer of property of resident and non-resident decedents. *Pamph. L.* 1914, *p.* 267.

. I further concur in the conclusion reached by the Vice Ordinary that the good-will of a business is an integral part thereof, and is to be taken into consideration in determining the value of that business. I consider, however, that the basis upon which the valuation of the transfer of the good-

will in the present case was rested by the comptroller is unsound. In making that valuation the comptroller assumed that the ownership thereof was exclusively in Mr. Hall, which was, as it seems to me, contrary to the fact, as will appear from the following recitals. Prior to 1910 Mr. Hall was engaged in the manufacture of beds and bedding in New York, Philadelphia and other places. In that year he entered into a partnership agreement with two of his sons and transferred the business to the partnership, with the exception of certain items, which were excluded in and by the partnership agreement. The transfer of this business to the partnership carried with it the good-will thereof, as well as the personal property used in the business, and the partners became the owners of that good-will. In 1918 this partnership was dissolved for the purpose of taking into the firm a third son, and at the same time a new partnership agreement was entered into between Mr. Hall and his three sons, the business being transferred from the old to the new partnership, with the exception of the same items that were excluded from the partnership agreement of 1910. By virtue of this second partnership agreement the business, including the good-will, became vested in the new firm and remained in the ownership thereof up to May 23d, 1919, when the transfer, which is the subject-matter of the tax now under consideration, was made by Mr. Hall to his three sons. This transfer is in the form of an agreement of dissolution, and is as follows: "By mutual agreement the co-partnership heretofore existing under the name of Frank A. Hall & Sons is hereby dissolved and terminated, Francis A. Hall now retiring from said business. It is agreed that his capital, as shown by the credit to him on the firm books, is the amount to which he is entitled and that the same is no longer capital invested in said business; but is a deposit to his credit, payable to him on demand or as soon as same can be realized in cash. The other partners shall have the right to continue the business under the firm name, and hereby agree to do so, their respective interests and compensation and shares in profits being in the same proportions as heretofore. The old co-partner-

ship articles shall apply except as modified by the retirement of Francis A. Hall." This agreement is signed by each one of the partners, and operated, as I think, to transfer to the sons the interest which the father had in the business, including his interest in the good-will thereof; that is to say, it operated to increase the respective interests which the sons had in the business, including such good-will. The learned Vice Ordinary concluded, as I do, that the good-will of the business at the time of the execution of the agreement of May 23d, 1919, was the property of the partnership; but he considered that, by reason of the fact that in each of the prior partnership agreements there was a provision that, in case of a dissolution of the firm, "the exclusive right to use in business the firm name of Frank A. Hall & Sons, or the name of Frank A. Hall & Son, or the name of Frank A. Hall & Company, shall belong to and be vested in said Francis A. Hall or his personal representatives"—coupled with the fact that the good-will in nowise figured in the book entries or the book values of the partners' shares, the decedent had the right to acquire this use without paying anything for it— the value of that right was practically equal to the value of the good-will; that the relinquishment of that right was, in legal effect, the equivalent of the transfer of the good-will itself; and that, therefore, the act of the comptroller of the treasury in assessing good-will as a part of the business transferred by the agreement of 1919, instead of the right to acquire that good-will, was a mere mistake in the use of words and would not justify a reversal of the comptroller's action. I concur in the view that this tax should not be set aside merely because of the inaccuracy of the language used by the comptroller in assessing it. I cannot assent, however, to the proposition that the right to continue a business under the same name theretofore used in conducting it is the sole element which constitutes good-will. I imagine there are numerous other things which enter into its composition. Certainly, one of its elements is the right to continue the business at the same place in which it has been established and where its reputation has been made, carrying with it the probability

that old customers will continue to resort to the old place for the purpose of making their purchases, notwithstanding the change in the name under which the business has been carried on, so long as the service remains satisfactory and the standard of the goods sold is maintained; and this element undoubtedly has value, although perhaps not so much as the continued use of the name under which the business has theretofore been conducted.

But, assuming this view to be unsound, a mere right to acquire the good-will of a business, which may be exercised or not at the option of the holder of that right, is not the equivalent of the ownership of the good-will. Good-will is property. An option to acquire it if the holder of the option sees fit to exercise it does not vest in him any ownership of the property itself or of any interest therein. The failure to exercise that option, or its relinquishment, by the holder, transfers nothing to the persons who held the property which was the subject of the option. It merely wipes out the possibility that they may in the future be deprived of their ownership by the exercise of that option. For this reason I conclude that the surrender by Mr. Hall of his right to acquire the good-will of this business (assuming that he had such right) did not justify the imposition of a tax upon that surrender, for the reason that section 1 of our Inheritance Tax law, as amended in 1914, limits the imposition of an inheritance tax to "the transfer of any property, real or personal * * * or of any interest therein or income therefrom."

As to the third contention of the prosecutor, namely, that the valuation placed by the comptroller of the treasury upon the good-will of this business is excessive, I reach the same conclusion as the Vice Ordinary, and for the reasons expressed by him in his opinion.

The result of the views which I have expressed leads to a modification of the decree appealed from, to this extent: that the case should be sent back to the comptroller of the treasury, with instructions to him to ascertain what was the

percentage of Mr. Hall's ownership in the good-will of the business conducted by himself and his sons, and to assess the inheritance tax upon the basis of that percentage.

It will be so ordered.