## GUGGENHEIM v. COMMISSIONER OF IN-
## TERNAL REVENUE.
### No. 345.

Circuit Court of Appeals, Second Circuit.
May 2, 1932.

Elihu Root, Jr., and George E. Cleary, both of New York City (Elihu Root, of New York City, of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Hayner N. Larson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for respondent.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

On June 28, 1917, the petitioner established by deed two trusts, one for a son and the other for a daughter, his only children. Two trustees, one an individual and the other a corporation, were named. The trusts were created for ten years, unless sooner terminated by the petitioner. A very substantial income was paid annually to the named beneficiaries and continued to the end of the ten-year period, at which time the principal of each trust was paid to the beneficiary, free of all restrictions. Provision was made for the children of the beneficiary, and in the event of death of either named beneficiary, if either died without children surviving, the petitioner was to receive the principal and accumulations. The right to alter or revoke each trust, except as to income received or accrued, and to direct the making of all changes in the securities included in the trust property, was retained by the petitioner. The trustees were authorized to do all things in connection with the trust, but subject to the petitioner's approval. Custody and title of the trust property were given to the trustees in their names. On May 5, 1921, petitioner gave to two individuals the power reserved to himself of directing and approving the management of the trusts. On July 13, 1925, he relinquished his power to alter, modify, or revoke the trusts. The corporate trust remained the same during this time but there were changes in the individual trustees. The petitioner never became a trustee. The income and proceeds of the trusts were paid throughout to the beneficiaries. The trust funds or the profits were never used by the petitioner in any way for his personal gain or benefit.

The Revenue Act of 1924, chap. 234, § 319 (43 Stat. 253 [26 USCA § 1131 note]), provides for the imposition, for the calendar year 1924 and each year thereafter, of "a tax * * * upon the transfer by a resident by gift during any calendar year of any property wherever situated, whether made directly or indirectly. * * * " And section 320 of the act (26 USCA § 1132 note) provides that if a gift is made in property, the fair market value thereof at the date of the gift shall be considered the amount of the gift. The commissioner imposed a tax on the trusts in question under these sections, basing it upon the determination that when, on July 13, 1925, the petitioner relinquished his power to alter, modify, or revoke the trusts, he thereby made a transfer by gift during that calendar year of the property which he gave to the trustees by the deeds of 1917.

The statute is constitutional and valid as applied to gifts made after its effective date. Bromley v. McGaughn, 280 U. S. 124, 50 S. Ct. 46, 74 L. Ed. 226. But it is invalid as to gifts made prior to June 2, 1924. Untermyer v. Anderson, 276 U. S. 440, 48 S. Ct. 353, 72 L. Ed. 615.

The question presented here is not whether Congress had the power to impose a tax which would apply to the act of relinquishment of the power of revocation in the trusts, conveying property for the benefit of named beneficiaries, but whether Congress has done so. In the phrasing of the gift tax statute, Congress had omitted any reference to powers of revocation as taxable. In the interpretation of the taxing statute, we must strictly construe the language employed and may not extend the intention by implication beyond the clear import of the terms used, nor may we enlarge the operation of the statute so as to embrace matters not specifically pointed out. And in case of doubt, that construction should be made which is in favor of the taxpayer. Smietanka v. First Trust & Savings Bank, 257 U. S. 602, 42 S. Ct. 223, 66 L. Ed. 391; Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156; United States v. Merriam, 263 U. S. 179, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547; Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211.

The act here, by force of the provisions of subdivisions (a) (2) and (b) (1) of section 321 of the act (26 USCA § 1133 note),

taxes transfers which are made by means of the creation of trusts, but the tax must be imposed at the time of transfer. Where, as here, the trust was created prior to the passage of the Revenue Act of 1924, and the termination of the power to alter, amend, or revoke occurred later, in 1925, the question is presented as to when there was an effective transfer by gift. Heretofore, when Congress has spoken with reference to the relinquishment of the power to revoke trusts, and desired to impose a tax, it has made it plain that the tax is imposed when the event occurs. In the estate tax provisions of the Revenue Act of 1924 there appeared a new section (section 302 (d) of the act (26 USCA § 1094 note), specifically including in the gross estate the value of the property with respect to which the decedent had created a trust and had reserved power in himself to alter, amend, or revoke. But in the instant taxing statute, Congress made no mention of a desire to impose the gift tax at the time of relinquishment of the power of revocation. By section 402 (c) of the Revenue Acts of 1918 and 1921 (40 Stat. 1097; 42 Stat. 278), and section 302 (c) of the Revenue Act of 1924 (26 USCA § 1094 note), it is specifically provided that transfers by the creation of trusts are to be taxed. Comparing these sections with what Congress stated in the statute here considered, it is evident that it did not intend the gift tax provision to cover a case where, in the year in question, there was no transfer of the property but merely a relinquishment of the power to alter, amend, or revoke the trusts theretofore created. The relinquishment of the power to alter, amend, or revoke a trust is not ordinarily regarded as a transfer of property by gift. Tyler v. United States, 281 U. S. 497, 50 S. Ct. 356, 359, 74 L. Ed. 991, 69 A. L. R. 758; United States v. Field, 255 U. S. 257, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461; Jones v. Clifton, 101 U. S. 225, 25 L. Ed. 908; Farmers' Loan & Trust Co. v. Bowers, 29 F.(2d) 14 (C. C. A. 2); Stone v. Hackett, 12 Gray (Mass.) 227. The power to revoke is not a property right. Jones v. Clifton, supra. Congress is not restricted in levying taxes to transfers. As said in Tyler v. United States, supra: "The question here, then, is, not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as

to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights."

 In referring to this act, the Supreme Court said in Blodgett v. Holden, 275 U. S. 142, 48 S. Ct. 105, 72 L. Ed. 206, that it should be read as referring only to transactions taking place after it was passed. The right to alter or revoke a trust in no way invalidates it, nor does the power of revocation affect the legal title to the property. In re Dolan's Estate, 279 Pa. 582, 124 A. 176, 49 A. L. R. 858. When the power of revocation was relinquished there was no transfer of the legal or beneficial title to the property involved, because that vested even though it was subject to termination at the will of the petitioner through his right to revoke. Reservation of the right to revoke, which was relinquished in 1925, was not included within the terms of the statute. Indeed, the relinquishment did not transfer but rather extinguished something. In re Hall's Estate, 99 N. J. Law, 1, 125 A. 246, affirmed 100 N. J. Law, 405, 126 A. 924. Thereafter, that which had vested could not be divested and the gift could no longer be recalled. Extinguishment of the power of revocation, standing alone from that which had previously passed, could not transfer anything of property to the beneficiaries. It merely completed the shifting of the economic benefits which had been in large part accomplished prior to 1924. Theretofore, to impose a tax upon such relinquishment of the power would to be read into the statute something which is not there. It would make taxable an act which took place after its passage but which accomplished nothing by way of transfer as to that which had taken place prior to the passage of the act, namely, at the creation of the trust. The act clearly says that it applies only to transfers which are made during the taxable year.

The cases of Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 72 L. Ed. 565, Chase Nat. Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388, and Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397, were cases in which the Supreme Court considered the constitutionality of taxing statutes. In the Saltonstall Case, the court accepted the interpretation of the state's highest court that a tax had been clearly imposed and it consid-

ered merely the right of the legislative branch of the state government to impose that tax. It was held that a reserved power of appointment left the transfer incomplete and subject to tax. The court had for consideration a trust which provided that it might be terminated in whole or in part by the donor with the concurrence of one trustee. After setting up the trusts, the Legislature of Massachusetts passed an act providing that failure to exercise a power of appointment should be taxable under the statute taxing inheritances. The words of the statute imposing this tax were clear and there arose no serious question of interpretation. The Supreme Court held that the statute was not retroactive and unconstitutional because something did occur on the extinguishment of the right of revocation which might be made the subject of a tax; that the power of appointment reserved by the donor left the transfer, as to him, incomplete and subject to a tax. The court held further that the act was not so unreasonable as to deprive the plaintiff of his property without due process of law, and that the extinguishment of the power was something on which the Legislature could impose an excise tax. The statute before the court in that case (St. Mass. 1909, c. 527, § 8), read: "Whenever any person possessing such a power of appointment so derived shall omit or fail to exercise the same within the time provided therefor, in whole or in part, a disposition of property taxable under the provisions of chapter five hundred sixty-three of the acts of the year one thousand nine hundred and seven and all acts in amendment thereof and in addition thereto shall be deemed to take place to the extent of such omission or failure."

The state court held that a tax having been levied, "the provisions of the trust instrument for change or termination of the trust by Peter C. Brooks with the consent of one trustee created a power of appointment. * * *" The question there presented was quite different from that in the instant case. The statute had a specific provision imposing the tax and the only question before the Supreme Court was whether the provision was constitutional. In Chase Nat. Bank v. United States, supra, the question involved was the constitutionality of section 401 of the Revenue Act of 1921, as supplemented by that part of section 402 (f), 42 Stat. 277, 278, which provided that the gross estate should include all property "to the extent of the excess over $40,000 of the

amount receivable by all other beneficiaries as insurance under policies taken out by the decedent during his own life." Section 401 imposed a tax upon the transfer of the net estate of every decedent. The court stated that the question presented was whether the termination at death of the power of decedent to dispose of the policies and their proceeds and the consequent passing to the designated beneficiaries of all rights under the policies freed of the possibility of its exercise may be the legitimate subject of a transfer tax. In Reinecke v. Northern Trust Co., supra, the court considered two groups of trusts. One group containing two trusts, became taxable under section 401 of the Revenue Act of 1921, imposing a tax upon the transfer of the net estate, and under section 402 (c), of the act (42 Stat. 278) providing for the inclusion in the gross estate of all property "to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust * * * intended to take effect in posesssion or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this act). * * *" The two trusts were created before the passage of the statute imposing an estate tax. The settlor had reserved to himself the income for life and on his death the income of each trust was to be paid to a designated beneficiary until the termination of the trust, with remainders over. He reserved to himself alone a power of revocation of the trusts. The Supreme Court considered only the question whether or not the taxing statute, if applied to these two trusts, was unconstitutional and void because retroactive, within the decision of Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081, where it had been held that a similar section of the 1918 Revenue Act was retroactive and unconstitutional as applied to transfers completed by the creation of trusts prior to the enactment of any such taxing statute. The court considered that the two trusts were intended to take effect in possession or enjoyment at or after the decedent's death and were thus within the specific provision of the statute. It determined only that this provision could be constitutionally applied to trusts of this kind. In the three above cases, all that was decided was that the specific provisions of the taxing statute clearly imposed the tax, and the only question was as to the constitutionality of the provisions. The Supreme Court

considered an income tax act in Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916, where a husband created a trust to pay the income to his wife for life, with remainders over to his children, and reserved the power to revoke the trust. The tax was assessed on the donor under section 219 (g) of the Revenue Act of 1924 (26 USCA § 960 note). The statute imposed a tax "where the grantor of a trust has ∗ ∗ ∗ either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor." There too a question of construction and constitutionality was presented to the Supreme Court, namely, whether the revenue act could be applied constitutionally to the grantor upon the facts there presented.

We think the reference to the transfer by gift of property means a transfer of title. The power to revoke was not a property right and the owner of such power had no title; when he surrendered the power, he did not transfer title. In United States v. Field, 255 U. S. 257, 41 S. Ct. 256, 258, 65 L. Ed. 617, 18 A. L. R. 1461, a tax was imposed under section 201 of the 1916 act (39 Stat. 777) upon the transfer of the net estate of a decedent. The decedent died in 1914 leaving a trust, the income of which was to be paid to his wife, and after her death to such persons as she should by will appoint. She died in 1917, leaving a will appointing the income after her death to her children. The commissioner included in the gross estate of Mrs. Field the property covered by the power of appointment. The Supreme Court dealt with the construction of the statute and held that section 202 of the act (39 Stat. 777), providing "that the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, ∗ ∗ ∗ tangible or intangible, wherever situated: ∗ ∗ ∗ (b) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death, ∗ ∗ ∗" had no provisions which applied to the exercise of a power of appointment. The court held that it was clear that section 202 (b) did not apply, and said: "It cannot, without undue laxity of construction, be made to cover a transfer resulting from a testamentary execution by decedent of a power of appointment over property not his own. It would have been easy for Congress to express a purpose to tax property passing under a general power of appointment exercised by a decedent had such a purpose existed; and none was expressed in the act under consideration." The difference between the Field Case and the instant case, if there be any, is a matter of the degree of economic control over the property enjoyed by a holder of a power of revocation and by a holder of a life interest plus a general power of appointment. But in both, the lack of ownership by the holder of the power is apparent.

The physical possession of the trust securities and the legal title thereto were transferred to the trustees in 1917, and equitable title was transferred to the beneficiaries at the same time. There was neither possession nor legal title, nor equitable title transferred by the extinguishment of the power of revocation. Whenever Congress has seen fit to tax powers of appointment or revocation, it has indicated that intent by clear language, and we must not abandon the authorities which have been consistently insistent upon strict construction of taxing statutes. As said in the Corliss Case, supra: "But taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." To impose this tax, we must say to the petitioner that the property was still his while he had the power to revoke, but when he gave up that power, he transferred the corpus by way of gift. This we cannot do. Nor may we say that the income of the property was still his while he held the power to revoke and when the income went to the beneficiary it was a transfer of the income by way of gift. When he relinquished the power of revocation, he did not make the gift; that was made when he created the trust in 1917.

The order is reversed.