[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 571 
Both of these suits arise out of a trust indenture dated July 18, 1928, made and executed by James H. Walden and Jennie R. Walden in which the Peoples Bank and Trust Company was named trustee. The trust was irrevocable but the donors and the survivor of them reserved the power to substitute another trustee or trustees and to appoint a co-trustee or trustees. Pursuant to such reservation the donors on November 23, 1940, substituted the Passaic National Bank and Trust Company and James P. Walden as trustees in the place and stead of Peoples Bank and Trust Company. On October 6, 1947, Jennie P. Walden as surviving donor appointed the First National Bank and Trust Company of Montclair as trustee in the place of the Passaic National Bank and Trust Company. The latter bank refused to recognize such substitution and refused to surrender its trusteeship. As a result the suit firstly above entitled was commenced in the old Court of Chancery the object of which was to remove Passaic National Bank and Trust Company as trustee. The pretrial order in that suit entered on January *Page 572 
14, 1949, provided that the Passaic National Bank and Trust Company account for its administration and upon approval by the court of its account and the allowance to it of compensation it will resign as trustee. Accordingly it filed said account which is the subject matter of the suit secondly above entitled.
In its account plaintiff placed a market value of $1,031,150 upon 1,127 shares of stock of Druwald, Inc., which it held in the trust. An exception to this item in the account was filed by some of the defendants contending that such market value was excessive.
The importance of the market value of this asset becomes manifest when it is considered that the trust indenture provides that commission upon principal is to be paid at the rate of two per cent. upon the market value of such principal at the termination of the trust. The stock in question represents one-half of the outstanding stock of Druwald, Inc. Druwald, Inc., is a holding company and its principal asset is a majority of the stock of the Passaic Daily News, Inc., which publishes The Herald-News, a daily newspaper circulating in Passaic and its environs. The stock in both companies is closely held. Neither is listed on any Exchange and there has been no sale of either stock from which a fair market value may be determined. Under such circumstances the value of the shares is arrived at by adding to the so-called "book value" of said shares the value of the good will of the corporation.
The method of determining the value of good will has been considered in several cases in our State. In Grell v. Kelly,134 N.J. Eq. 593, 36 A.2d 874, it was held:
"Good will, of course, is an asset. In re Bottomley,92 N.J. Eq. 202; 111 A. 605; In re Hall, 99 N.J.L. 1;125 A. 246; affirmed, 100 N.J.L. 405; 126 A. 924; In re Deutz,supra. Not every corporation has such an asset. It is elusive and does not long endure independently of the enterprise and effort of the successors. Therefore, no fixed and immutable rule can be applied to its valuation in all cases. Its existence for tax purposes does not depend upon whether or not the corporation carries it as an asset on its books. In re Deutz, supra. There is a commonly accepted method of determining *Page 573 
the value of good will which was approved by this court, In reHall, 94 N.J. Eq. 398; 119 A. 669, and also inferentially, in the same case by the Supreme Court on certiorari
(99 N.J.L. 1; 125 A. 246) and by the Court of Errors and Appeals,100 N.J.L. 405; 126 A. 924. The valuation by that method is determined by computing the yearly average net profit (after deducting six per cent. interest on the capital) for the normal business years previous to decedent's death and multiplying it by a multiplier called `number of years purchase,' which in the particular circumstances may be from two to six years. A three-year multiplier has perhaps most frequently been accepted as a reasonable and conservative figure. Cf. In re Hall, supra;In re Deutz, supra. The five-year figure, is not inordinate.Gleason Otis, Inheritance Taxation (4th ed.) 599 et seq."
See, also, In re Hall, 94 N.J. Eq. 398, 119 A. 669,99 N.J.L. 1, 125 A. 426; 100 N.J.L. 405, 126 A. 924; In reMoore, 104 N.J. Eq. 400, 145 A. 727; In re Deutz,105 N.J. Eq. 671, 149 A. 257; Johnson v. Zink, 140 N.J. Eq. 255, 54 A.2d 123.
The plaintiff properly followed the theory enunciated in these cases in calculating the value of the good will and adopted ten years as the "number of years purchase." No rigid or unvarying rule has been laid down by the courts for the determination of the value of good will. 38 C.J.S. 953, § 6; Grell v. Kelly,supra. The multiplier varies in ordinary cases from two years to six years. Professor Bonbright, a professor of finance, Columbia University, in Volume II, page 731, of his work Valuation of Property, in discussing valuation of good will says:
"* * * If the average net earnings are not in excess of 6 per cent. of this net worth, no good will is usually found to exist. But any excess earnings over 6 per cent are deemed to reveal a good-will value, which is determined by multiplying the excess by a `suitable factor.' Just what the factor is supposed to signify is not clearly discussed in the cases. It is generally spoken of as the `number of years' purchase,' and presumably is thought of as the number of years' excess earnings that a purchaser would pay in advance in order to acquire the good will. The cases assume that the choice of a factor is restricted to the figures lying between certain maxima and minima established by precedent, but that within these limitations the choice is a question of fact in every case to be determined on the basis of all the circumstances bearing upon the probability of continued future excess earnings. *Page 574 
"In the usual cases, the range is between 1 and 5 years' purchase. The factor adopted most frequently and apparently regarded as least in need of justification, is 3. Second in frequency is 5. Where the business is unusually stable and productive, 10 years' purchase has been taken, as in the case of Tiffany Company, and the New York World. It has been held that the number of years' purchase should not exceed the number of years the concern has been in existence, which seems a very mechanical application of the tendency to regard the stability of profits as increasing with the length of time a business has been established. * * *"
The Herald-News was established in 1873; it circulates in Passaic, Clifton, Garfield, Ridgefield and Lyndhurst; it has a daily circulation of approximately 51,000; it enjoys a virtual monopoly in the area which it serves as no other daily newspaper is published in that area; its average annual net earnings for the past five years approximates $183,000. Considering all of these factors, the nature of the business, its stability and the probability of continued future earnings, it seems to me that a multiplier of ten years is fair and reasonable. In re Moore'sEstate, 161 N.Y. Supp. 142. The exception is overruled.
The trust indenture provides for compensation of the trustee. Paragraph 9 provides that the trustee shall be entitled to a commission of two per cent. upon the market value of the principal of the trust fund calculated as of the time of the termination of the trust. By agreement dated November 23, 1940, between plaintiff and its co-trustee in which the settlors joined, the co-trustee waived in favor of plaintiff his right to share in the commissions and it was agreed among them that the plaintiff was to receive all such commissions payable to the trustees. In this instrument plaintiff agreed that the termination compensation shall be in accordance with the provision of the trust indenture, reduced by such amount as shall have been paid as corpus commissions to the original trustee. The commission so paid was the sum of $4,000. Plaintiff asks that it be allowed as compensation the sum of $20,000. It contends (1) that the words "to be paid upon the termination of the trust" means not only when the trust res is distributed to the beneficiaries but also when the relationship between the trustee and the trust is *Page 575 
ended; and (2) that presently the two per cent. provided for in the trust indenture is available for commissions. With its first contention in so far as its compensation is concerned, I agree.Haas v. Hudson County National Bank, 115 N.J. Eq. 311,170 A. 611. I cannot agree with its second contention. I interpret the trust indenture as anticipating that two per cent. of the principal is to be the total commission to be paid for the whole period of the trust. Plaintiff by its agreement of November 23, 1940, agreed to be bound by the provisions of the trust indenture. These provisions control the court. Commercial TrustCo. of New Jersey v. Spiegelberg, 117 N.J. Eq. 171,175 A. 164; affirmed, Commercial Trust Co. of New Jersey v. Mason,119 N.J. Eq. 376, 182 A. 875. The commissions will be apportioned. Richard J. Mellman who is an actuarian, in his affidavit estimates the life expectancy of the last survivor of the life beneficiaries as of April 1, 1949, at 36.36 years. The probable duration of the trust will be 36.36 years plus the 20 years already elapsed, or approximately 56 years. The total commission based upon plaintiff's market value of the trust estate at two per cent. amounts to $31,510.65. Plaintiff has served as trustee since November 23, 1940 — a period of eight and one-half years. It will be allowed commissions of $4,800.
Present judgment in accordance herewith.