**Dollie E. BRADLEY, Claimant-Respondent,**

v.

**Austin HILL, Director of State Department of Public Health and Welfare, Defendant-Appellant.**

No. 8927.

Springfield Court of Appeals, Missouri.

July 2, 1970.

Motion for Rehearing or to Transfer Denied

July 21, 1970.

Application to Transfer Denied
Sept. 14, 1970.

Elmore G. Crowe, Curtis J. Quimby, Edward D. Summers, Jefferson City, for defendant-appellant.

Emory Melton, Cassville, for claimant-respondent.

STONE, Judge.

This is an appeal by the Director of the Department of Public Health and Welfare from the judgment of the Circuit Court of Barry County reversing and remanding for redetermination a decision of the Director denying on December 23, 1968, the application of claimant, Dollie E. Bradley, for old age assistance benefits on the ground that she had "transferred property rights without receiving fair and valuable consideration therefor and [was] therefore disqualified for public assistance under Section 208.010, RSMo."

On November 25, 1951, claimant married W. H. Bradley, a widower with seven children, and moved into his home on a 160-acre farm where he had lived "all his life" and where he and claimant continued to reside until their marital union of more than sixteen years' duration was terminated by his death on December 26, 1967. Claimant brought no property to the marriage other than "three or four pieces of furniture" and her clothing; and, during her marriage to Mr. Bradley, she had no gainful employment or independent income. Her age, not fixed in the record, is indicated by the fact that she had "drawn social security" for some two years prior to her husband's death, and her eligibility for old age assistance has not been, and is not here, questioned on the ground of age.

By his last will and testament executed on May 3, 1963, and admitted to pro-

bate on December 27, 1967, Mr. Bradley (a) bequeathed to claimant certain personal property specifically described and all other furniture, appliances, dishes, silverware and canned goods acquired after the date of the will, (b) directed the executors to sell all other personalty and, after payment of debts and expenses of administration from the proceeds of sale, bequeathed the remainder of such proceeds to claimant, (c) devised his 160-acre farm to claimant and his seven children, share and share alike, and (d) appointed a son and daughter-in-law as coexecutors. As directed by § 474.170, claimant was notified of her right to take against the will by the filing of written election so to do within ten days after September 27, 1968 [§ 474.-180]; and on September 30, 1968, a caseworker investigating claimant's eligibility for old age assistance benefits, for which she had made written application on September 9, 1968, "warned her that her waiver of her statutory rights would disqualify her for public assistance." (Except as otherwise specifically stated, all statutory references are to V.A.M.S., RSMo 1959.) However, she filed no such written election and no application for any statutory allowance from her husband's estate because, so she stated at the hearing on her application for benefits, she and Mr. Bradley had agreed before they were married "that I would get a child's part." In the course of the caseworker's prior investigation, claimant had offered like explanation and also had commented "she didn't want to cause hard feelings among the children." [1]

In accordance with the will, the personalty, other than that specifically described and bequeathed to claimant, was sold for the aggregate sum of $2,626.16, debts and expenses of administration totaling $1,765.-26 were paid, and the balance of $860.90 was distributed to claimant; and the 160-acre farm was sold for $15,000, pursuant to authorization of the probate court, and one-eighth of that amount, i. e., $1,875, was distributed to claimant, each of the testator's six surviving children, and the heirs of one deceased child.

The Director ruled "that the widow [claimant] was notified that she had some *rights* in the estate in adequate time to claim [those] *rights* but that she intentionally waived them. It follows that she *transferred property rights* without receiving fair and valuable consideration therefor and is therefore disqualified for public assistance under Section 208.010, RSMo." (All emphasis herein is ours.) That portion of § 208.010, subsec. 2, subd.(1) (a) [as amended Laws 1967, pp. 321, 324],[2] relied upon by the Director and relevant to our inquiry provides that: "2. Benefits shall not be payable to any claimant who: (1) (a) Has, or whose spouse with whom he is living has, encumbered, assigned, conveyed, or *transferred* real or personal property, of which he is the record or beneficial owner, or any interest therein of any value within five years preceding the date of the investigation without receiving fair and valuable consideration." The determinative question is whether claimant's waiver of her marital rights by mere nonaction *"transferred"* property or an interest therein, within the meaning of § 208.010, subsec. 2(1) (a).

■ As the surviving spouse claimant had a *right*, i. e., a prerogative or privilege [see "right," Webster's Third New International Dictionary, p. 1955], of elec-

---

1. Although received without objection, the evidence pertaining to an alleged oral antenuptial agreement was clearly incompetent. §§ 451.220, 432.010, 474.120 (as amended Laws 1963, p. 655), and 474.220. Hence, we have put it behind us and wholly disregarded it, considering only the competent and admissible evidence. V.A.M.R. Rule 73.01; § 510.310; Ellis v. State Dept. of Public Health & Welfare,

365 Mo. (banc) 614, 624, 285 S.W.2d 634, 641(16, 17); Garrard v. State Dept. of Public Health & Welfare, Mo. App., 375 S.W.2d 582, 587(10).

2. Another in the long series of acts amending § 208.010 was enacted in 1969 [Laws 1969, H.B.No.804] but the quoted language of subdivision (1) (a) of subsection 2 remained unchanged.

tion to take against the will. § 474.160. This right was "personal" to her and "not transferable" [§ 474.200], and no benefit whatever could have accrued by virtue thereof, unless and until she had acted affirmatively by filing a written election within the time limited by § 474.170. Claimant also had other *rights* which she did not waive by taking under the will [§ 474.230], namely, (1) the right to "exempt property" [§ 474.250], (2) the right to a "family allowance," often referred to as a year's support [§ 474.260, as amended Laws 1967, p. 645], and (3) the right to a homestead allowance [§ 474.290, as amended Laws 1961, p. 653]. Again, these were prerogatives or privileges from which no benefit whatever could have accrued unless and until (a) she had acted affirmatively by filing proper applications and (b) in response thereto the probate court had entered appropriate orders of allowance.[3] In other words, none of claimant's rights could have ripened "into actual ownership and right of possession without an order of the proper tribunal, the probate court." State ex rel. Meyer v. Arnold, Mo.App., 220 S.W.2d 942, 944.[4]

Nevertheless, the Director insists that claimant's waiver of those known rights by mere nonaction constituted "a transfer of property without receiving fair and valuable consideration therefor within the meaning of subsection 2 of Section 208.-010." The Director undertakes to support his position (a) by directing attention to the statutory definition of "transfer" in the *inheritance tax act* [§ 145.010(4)][5] and to the case of In re Atkins' Estate, Mo., 307 S.W.2d 420, holding that the marital rights of the surviving spouse were exempt from such tax under § 145.090(3), RSMo 1949, as amended Laws 1953, p. 739, (b) by emphasizing the fact that *fraudulent conveyances* under § 428.020 are not limited to transfers of property by written conveyances and, in this connection, citing In re Kalt's Estate, 16 Cal.2d 807, 108 P.2d 401, where it was held that the *affirmative act of a legatee in renouncing his legacy* under the will constituted a *fraudulent conveyance* ineffective as against the prior lien of a creditor—a question on which, as the opinion recognized [108 P.2d at 402], there was a sharp division of authority in other jurisdictions, (c) by pointing to Briscoe v. Merchants & Miners Bank, Mo.App., 102 S.W.2d 751, 754(8), where it was said that a widow "had a right to waive her claim to, or assign her interest in," $72.85 in her deceased husband's bank account in order that it might be applied on his burial expenses, and (d) quoting the definition of "transfer" in 1 Restatement of

3. Concerning *exempt property*, see the suggested forms of application and order following § 474.250 [26 V.A.M.S., 1969–70 cum. pocket part, pp. 66–67] ; § 474.270 ; Andrews v. Brenizer, Mo.App., 230 S.W. 2d 787, 792(6, 7) ; State ex rel. Meyer v. Arnold, Mo.App., 220 S.W.2d 942, 944(1), 947 ; Lamar v. Belcher, 154 Mo. App. 571, 572–573, 136 S.W. 748(1) ; In re Stokes' Estate, 167 Pa.Super. 128, 74 A.2d 517, 519(2, 4). Concerning the *family allowance* or year's support, see In re Estate of Guthland, Mo.App., 438 S.W. 2d 12, 16(4) ; Andrews v. Brenizer, supra, 230 S.W.2d at 792(7). Concerning the *homestead allowance*, see § 474.290, subsec. 7, and the suggested forms following that statute in 26 V.A.M.S., 1969–70 cum. pocket part, pp. 73–78.

4. We cannot agree with the Director that "ownership" of *exempt property* "vested absolutely in the surviving spouse [claim-ant] under § 474.250." Section 474.280, which recognizes the right of an executor to sell, and thus to convey good title to, exempt property at any time before it is received by the widow, clearly indicates that, upon her husband's death, claimant was vested with the *right* to apply for exempt property [§ 474.270] and obtain an appropriate order of allowance, but was *not* vested with the *title* thereto. See State ex rel. Meyer v. Arnold, supra note 3, 220 S.W.2d at 944, so declaring under §§ 107 and 109, RSMo 1939, predecessor statutes to §§ 472.250 and 474.280, respectively.

5. "The word 'transfer' as used in this chapter shall be taken to include the passing of property or any interest therein * * * by inheritance, descent, devise, succession, bequest, grant, deed, bargain, sale, gift or appointment in the manner herein described." § 145.010(4).

Property § 13(1), p. 32.[6] But in our view of the instant case, the Director's argument and authorities do not reach or rule the situation here presented.

As hereinbefore quoted, the Director's decision was "that the widow was notified that she had some *rights* in the estate * * * but that she intentionally waived them." Wherefore, so concluded the Director, "[i]t follows that she *transferred property rights* without receiving fair and valuable consideration therefor and is therefore disqualified for public assistance under Section 208.010, RSMo." The quoted language obviously referred to claimant's *marital rights* to have, upon proper applications by her and appropriate orders by the probate court, exempt property, a family (or year's) allowance, and a homestead allowance. Were those rights "transferred," as the Director found, by virtue of claimant's waiver thereof by nonaction? We think not.

"Transfer" is a transitive verb; and, in ordinary usage of that term, an *active transitive* effect or concept is implied thereby and inherent therein. So, where a statutory definition of the term has not been involved, "transfer" has been defined as "'the act by which the owner of a thing delivers it to another with the intent of passing the right he has in it to the latter.'"[7] Instant claimant's nonaction was the very antithesis of an "act by which the owner of a thing delivers it to another * * *." She was "the owner" of no portion of the estate (other than that bequeathed and devised to her which she took and retained), and she in no wise acted to convey or deliver anything to another. On the contrary, the fact she did absolutely nothing is the very essence of the Director's complaint. Acceptance of his contention that claimant "transferred property rights" by virtue of her waiver of marital rights by nonaction would embrace and enfold that nonaction within the active transitive concept implied by, and inherent in, ordinary usage of the verb "transfer"—in short, would equate nonaction and action. We are of the opinion that imputation of any such legislative intent as to the meaning of "transferred" in Section 208.010, subsec. 2(1) (a), would be wholly unwarranted, and that the plain and rational meaning of that word, from which the legislative intention in use thereof in the cited statute may and should be found,[8] is well expressed and reflected by the above-quoted definition.

However, we need not and do not rest our conclusion upon that basis alone, for we are mindful, as the Director here emphasizes, that "transfer" is not a term of fixed and invariable meaning in all contexts, circumstances and cases,[9] and that in some situations there may be involun-

---

6. "The word 'transfer,' as it is used in this Restatement, when applied to interests in land or in a thing other than land, means the extinguishment of such interests existing in one person *and the creation of such interests in another person.*"

7. Carter v. Butler, 264 Mo. 306, 330, 174 S.W. 399, 405. See Sawyer v. Sanderson & Thomas, 113 Mo.App. 233, 243, 88 S.W. 151, 153; 3 Bouvier's Law Dictionary (Rawle's 3rd Rev.), p. 3308; Black's Law Dictionary (4th Ed.), p. 1669.

8. State ex rel. LeNeve v. Moore, Mo. (banc), 408 S.W.2d 47, 49(3); Missouri Public Service Co. v. Platte-Clay Elec.

Coop., Mo., 407 S.W.2d 883, 891; State ex rel. MFA Mutual Ins. Co. v. Rooney, Mo. (banc), 406 S.W.2d 1, 3(1); State ex rel. Clay Equipment Corp. v. Jensen, Mo. (banc), 363 S.W.2d 666, 669(3). See § 1.090.

9. Witness the forty pages devoted to "transfer" in 42 Words and Phrases (Perm.Ed.) and the current pocket part, but mark that in many of the cases there digested, the scope and meaning of that term were defined or delineated by a controlling statute. E. g., 11 U.S.C.A. § 1(30), Bankruptcy Act; § 145.010(4), Inheritance Tax Act; § 428.020, Fraudulent Conveyances Act.

tary transfers by operation of law.[10] But proper determination of the controversy at hand neither requires unqualified approval or adoption of any recorded definition of "transfer" nor necessitates our formulation and promulgation of a precise definition of that term. The cardinal and controlling verities here are that instant claimant's marital rights were prerogatives or privileges, personal to her as the surviving spouse; that, when she waived those rights by her nonaction, they were terminated and extinguished; and that no such rights passed to, or were vested or created in, any other person then or thereafter.[11]

Some of the earlier cases stated that "[t]here is no meaning of the word 'transfer' which carries the idea of an act of extinction [extinguishment], or any other idea than that of the bearing [passing] over of a right or title or property in a thing from one to another." Sands v. Hill, 55 N.Y. 18, 22; Lane v. Albertson, 78 App.Div. 607, 79 N.Y.S. 947, 954; Miles v. Bowers, 49 Or. 429, 90 P. 905, 907. Perhaps it might be better said that the overriding concept inherent in, and the dominant element indispensable to, "transfer"

of a given right or interest is that of the passing over to another of such right or interest,[12] and that the idea of extinguishment is involved only in that, as one of the interdependent and contemporaneous steps in the "transfer," the *transferor's* right or interest (*but not the right or interest itself*) is extinguished when such right or interest passes to, and is vested or created in, the transferee. See 1 Restatement of Property § 13(1), Comment a, l. c. 33. For the purposes of this opinion it is sufficient to hold, as we do, that termination and extinguishment of claimant's marital rights by virtue of her waiver thereof by nonaction, which said rights were not then, and could not have been thereafter, vested or created in any other person, did not constitute a "transfer" of "property rights," as the Director found. Accordingly, the Director's decision was arbitrary and unreasonable. Section 208.100(5).

The judgment of the circuit court setting aside the decision of the Director of the Department of Public Health and Welfare and remanding the cause to him for redetermination of the issues is affirmed.

TITUS, P. J., and HOGAN, J., concur.

10. In 73 C.J.S. Property § 15b(1), p. 207, cited by the Director in this connection, "transfer" is defined as "an act of the parties or of the law by which the title to property is conveyed from one living person to another; a transaction by which the property of one person is by him vested in another; any act by which the property of one person is vested in another; a passing of title to property from one living person to another * * *."

11. In these respects, claimant's marital rights were analogous to an optionee's right. An option is simply " 'a right of election to exercise a privilege' " [Thacker v. Flottmann, Mo., 244 S.W.2d 1020, 1022(3); Lively v. Tabor, 341 Mo. 352, 361, 107 S.W.2d 62, 66(6), 111 A.L.R. 976] and vests in the optionee "only a right *in personam* to buy at his election." Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N.W.2d 362, 365(2), 166 A.L.R. 435; Transamerica Corp. v. Parrington, 115 Cal.App.2d 346, 252 P.2d 385, 389. See Standiford v. Thompson, 4 Cir., 135 F.

991, 996. It "transfers" to the optionee no title to, or interest in, property [Sunray DX Oil Co. v. Lewis, Mo., 426 S.W. 2d 44, 49(10); Fisher v. Lavelock, Mo., 282 S.W.2d 557, 560(5); Farmer v. Littlefield, 355 Mo. 243, 245, 195 S.W.2d 657, 659(3); Ware v. Quigley, 176 Cal. 694, 698, 169 P. 377, 378], no "property rights" [Fallbrook Public Utility Dist. v. Cowan, 9 Cir., 131 F.2d 513, 516, certiorari denied 320 U.S. 735, 64 S.Ct. 33, 88 L.Ed. 435], and no "right in rem." Standiford v. Thompson, supra, 135 F. at 996. And the optionee's failure to exercise an option "transfers nothing" but "merely wipes out" the option. In re Hall's Estate, 99 N.J.L. 1, 125 A. 246, 248(2), affirmed 100 N.J.L. 405, 126 A. 924.

12. In this connection, see again the definitions of "transfer" in the authorities cited in note 7, supra, and in 73 C.J.S. Property § 15b(1), p. 207, quoted in note 10, supra.