**E. L. KEITH and Ilda B. Keith,
Plaintiffs-Appellants,**

v.

**Lola TUCKER and N. C. Carroll,
Defendants-Respondents.**

**No. 9166.**

Missouri Court of Appeals,
Springfield District.

July 17, 1972.

Douglas, Douglas & Douglas, Neosho, Robert E. Yocum, Pineville, for plaintiffs-appellants.

Ruyle & Henry, C. E. Ruyle, George A. Henry, Neosho, for defendants-respondents.

STONE, Judge.

The state of facts and circumstances, out of which this court-tried controversy even-

tually developed, had its genesis in a casual conversation late in October or early in November 1969 during a chance luncheon meeting between plaintiff E. L. Keith (hereinafter sometimes referred to as plaintiff) and defendants Lola Tucker and N. C. Carroll in a crowded cafeteria at Bentonville, Arkansas. Invited by plaintiff *to sit at his table, defendant Tucker* (hereinafter sometimes referred to as defendant) mentioned that she was selling her farm and "was looking for another place," to which plaintiff responded "let me sell you mine." This was a 395-acre tract, known as the "K–Bar Dude Ranch" and situate in McDonald County, Missouri, just north of the Missouri-Arkansas state line. Subsequent discussions between the parties culminated in the execution by plaintiffs E. L. Keith and Ilda B. Keith, husband and wife, and by defendant Lola Tucker of three instruments dated November 20, 1969, received in evidence and hereinafter referred to as (plaintiffs') exhibits 2, 3 and 4; and on December 4, 1969, defendant Tucker accompanied by defendant Carroll, whose status appears to have been that of an employee, moved onto the ranch. On November 13, 1970, plaintiffs instituted this action in which they sought recovery of possession of the ranch, $5,000 for the alleged wrongful withholding of possession, and for "grants [sic] and profits . . . at the rate of $750 per month until possession is given." The issues raised by defendant Tucker's answer and three-count counterclaim, defendant Carroll's general denial and plaintiffs' reply were, following trial on June 22, 1971, determined and adjudicated by the conscientious trial judge in a carefully considered eleven-page written opinion which on July 9, 1971, *restored possession of the ranch to* plaintiffs and entered judgment in the net amount of $5,105.78 in favor of defendant Tucker and against plaintiffs, from which judgment they appeal.

Determination of the single point in plaintiffs'-appellants' brief depends primarily upon construction of the three afore-mentioned instruments dated November 20, 1969. Plaintiff, modestly conceding that he was "a man of considerable business dealings," drew all of these instruments— "to save lawyers' fees for them [defendants], I agreed to write it"; and, as becomes immediately apparent from examination thereof, these products of his draftsmanship manifest and exemplify the frailties and infirmities so frequently found in work of this character undertaken by one neither trained nor skilled therein.

*Exhibit 2*, three 8½" x 14" pages in length with notarial acknowledgment on a fourth page, was entitled and characterized on the first page as "LEASE WITH OPTION TO BUY AGREEMENT," the same caption followed by the page number was placed at the top of the second and third pages, and in the notarial acknowledgment on the fourth page the subscribed instrument was identified as *"the foregoing Lease With Option To Buy Agreement."* (All emphasis herein is ours.) The first paragraph of exhibit 2 read: "This is a *Lease, Contract and Agreement* made and entered into by and between E. L. Keith and Ilda B. Keith, husband and wife; herein known as *Lessor,* and Lola Tucker, a single woman; hereafter known as *Lessee.* (The terms Lessor and Lessee shall be construed in the singular or plural according as they respectively represent one or more than one person and shall be binding upon the heirs and successors of all parties in *this lease.)*" Throughout exhibit 2, the respective parties were referred to as *Lessor* and *Lessee.* The initial "covenant and agreement" of exhibit 2 was that "[t]he Lessor agrees to lease and the Lessee agrees to lease from the Lessor the following described real estate improvements thereon, and certain listed equipment." This was followed by a purported legal description of the ranch (which, however, did not name the county in which it was located) and a list of the leased equipment. Exhibit 2 then stated "[t]here is to be built and paid for by Lessor, three (3) 32 ft. by 350 ft. brooder houses on the

above property at a cost of approximately $41,000," listed the buildings on the ranch, and obligated Lessee to pay Lessor "$500 on January 1, 1970, $500 on February 1, 1970, $500 on March 1, 1970, $500 on April 1, 1970 and $500 on May 1, 1970 as lease money only and is not considered as any part of the purchase price of the agreement hereafter mentioned."

The next paragraph of exhibit 2 provided that "[u]pon payment of the above $2,500 and on June 1, 1970 *the second phase of this contract* becomes effective." This *"second phase,"* which dealt primarily with purchase of the ranch by Lessee and thus necessarily was predicated upon the prior and prerequisite exercise by Lessee of her option to buy, provided for payment by her of the sum of $166,000 in monthly installments of $1,043.41 each for twenty-three years, those installments including interest on the unpaid balances as computed by Lessor. Near the close of exhibit 2, it was recited that "Lessee has given to Lessor a certain obligation for $10,000 due her for property" she had sold to one Rader just prior to her chance luncheon meeting with plaintiff in Bentonville, and that "Lessor has accepted this $10,000 obligation as payment in guaranteeing Lessee will keep the above agreement and make the payments as stated." Upon trial, plaintiff agreed that by taking this "obligation" he had received $10,000.

*Exhibit 3* was entitled "CONTRACT FOR THE LEASE OF REAL ESTATE AND EQUIPMENT." It initially recited that "Lessor [again identified as both plaintiffs] has agreed to lease to the Lessee [defendant Tucker]" the ranch described as in exhibit 2, "plus all improvement [sic] thereon, plus 3–32 ft. by 350 ft. broiler houses to be built by [plaintiff] E. L. Keith, plus the following equipment" there listed. Another paragraph dealt with the taking of bids for, and the construction of, the three broiler houses. After expressly reciting that "this lease does not include . . . [a]ll livestock, all saddles and gear and tools at the saddle barn, the mobil [sic] home that Red Dodson lives in at the saddle barn . . . and 700 bales of choice hay," this instrument informally detailed the "saddle horse deal," i. e., that plaintiff was "to keep 25 head of over two-year-old horses plus any colts on the farm" and was "to get the use of South pastures now used by the horses" and "to furnish necessary grain and hay for the horses"; that defendant was "to feed and take care of the horses and operate the saddle barn and she is to get 60% and [plaintiff] is to get 40% of all fees charged for trail rides and use of horses"; and that plaintiff "will be allowed to sell any and all horses any time but [defendant] will have the refusal to buy the horse [sic] at the price offered." Finally, defendant was given "the refusal to buy or not to buy" all cattle on the ranch at a price to be determined as there detailed. Notwithstanding the melange of matters gathered into exhibit 3, plaintiff asserted that "the main purpose of this contract was for renting and leasing of the horses."

*Exhibit 4* was entitled "LEASE AGREEMENT AND CONTRACT ON REAL ESTATE." In the first paragraph, it was stated that "[t]his is a lease and agreement" between plaintiffs, jointly identified as Lessor, and defendant Tucker identified as Lessee. This instrument declared that "Lessor does by these presents lease and demise unto the said Lessee" the ranch again described as in exhibit 2 and the equipment listed in that exhibit. Exhibit 4 then recited that "[i]t is agreed and understood that the terms of this lease is stated and agreed upon in a lease sales agreement between Lessor and Lessee dated November 20, 1969 . . . ." According to plaintiff, this "contract was wrote for no other purpose except to record." However, neither the transcript nor the exhibit itself indicates that exhibit 4 (or either of the other two exhibits) was recorded, and upon trial defendant insisted that "I didn't know anything about recording one." Defendant Carroll signed as a "witness" to the signatures of the parties

on each instrument, but he was not a party to, and was not mentioned in, any of them.

After defendant Tucker "got interested" in the ranch but before the foregoing instruments were prepared, she and defendant Carroll told plaintiff that "if we had the chicken houses, we felt we could make the payments"; and, as we have noted, plaintiffs contracted in exhibits 2 and 3 to build three "brooder houses" or "broiler houses." However, no completion date was specified, construction of these chicken houses was delayed (because of bad weather, so plaintiff said), and defendant was unable to put chickens in them until about April 28, 1970. In the meantime, defendant had "told [plaintiff] that without the chicken houses I couldn't meet his payments" and she "was very upset because they weren't being built." Hence, defendant made no payment until after the "first batch of chickens went out," when she deposited the sum of $1,587 in the bank to plaintiff's credit, that being the entire proceeds derived from sale of the chickens "plus a little extra." This deposit of $1,587 was the only payment by defendant to plaintiffs prior to June 1, 1970.

■ The sole point in plaintiffs'-appellants' brief is that "[t]he court erred [a] in holding that plaintiffs exhibits 2, 3 and 4 were leases and not a combination lease and contract of sale and [b] in ordering the appellants to repay $10,000 received as down payment on a sale price of $166,000." We observe initially, as we have had occasion to do so frequently, that the quoted point states and saves nothing for appellate review because V.A.M.R. Rule 84.04(d) [formerly Rule 83.05(e)] requires that each point relied on shall state not only *"what"* the alleged error was but also *"why"* the action, of which complaint is made, was erroneous. Chambers v. Kansas City, Mo., 446 S.W.2d 833, 841(14); Sharp v. Robberson, Mo.App., [No. 9164 not yet reported]; Herrick Motor Co. v. Fischer Oldsmobile Co., Mo.App., 421 S.W.2d 58, 63(4). Nevertheless, we

have, ex gratia, considered the two complaints in this bifurcated point and here dispose of them on their merits.

■ *Of complaint (a).* The trial court's first finding was that the parties had "entered into a lease agreement with the option to purchase" the real estate thereafter described. Without prolonging this discussion to an utterly intolerable length by recording in extenso the inept, confused and confusing composition and language of exhibits 2, 3 and 4, suffice it to state our conclusion that each of those three instruments, viewed alone or as one of the triumvirate, was ambiguous in various respects and fairly open to and susceptible of more than one meaning. That being true, the construction should be adopted which operates most strongly against plaintiff, who prepared all of the instruments, and in favor of defendant who merely signed them. Engel v. Cord Moving & Storage Co., Mo.App., 313 S.W.2d 173, 176(3); Leathers v. Metalcraft Mfg. & Sales Corp., Mo.App., 240 S.W.2d 211, 213(3); John Deere Plow Co. v. Cooper, 230 Mo.App. 167, 174, 91 S.W.2d 145, 148(2); 1 Restatement, Contracts § 236(d), p. 327; 17 Am.Jur.2d Contracts § 276, p. 689; 17A C.J.S. Contracts § 324, p. 217. Accordingly, we accept and approve the trial court's finding that the parties "entered into a lease agreement with the option to purchase"—a finding which simply tracked and adopted the characterization of the principal instrument, exhibit 2, by plaintiff, the draftsman thereof, as reflected by the caption at the beginning of the instrument and at the top of each succeeding page and by the identification of the instrument in the notarial acknowledgment, to wit, "LEASE WITH OPTION TO BUY AGREEMENT."

In fact, the pleadings, the evidence upon trial, and the presentation here leave plaintiffs in no position to maintain that exhibit 2 did not grant an option to buy. In the third count of her counterclaim, defendant pleaded affirmatively "that at no time did she exercise the option to purchase

. . . and that at no time did the 'second phase' of said contract become effective." In answer thereto, plaintiffs asserted "that defendant Lola Tucker did exercise the option to purchase." It will be remembered that exhibit 2 provided that "upon payment of the above $2,500 [the five monthly payments of $500 each] and on June 1, 1970 the second phase of this contract becomes effective." None of the stipulated monthly payments were made but, as we have noted, defendant did make a single deposit of $1,587 to plaintiff's credit which the parties appear to have treated "as lease money." In a self-serving effort to retroactively move defendant into the position of having timely paid $2,500 "as lease money" and thus having exercised her option to buy, plaintiff stated upon trial that he "voluntarily" credited defendant "for $1,000 on the first two [monthly] payments." Defendant said that she had never heard of this "credit" prior to the taking of plaintiff's deposition on February 10, 1971, some three months after this action was instituted.

■ However, plaintiff could not effect an exercise of defendant's option by any such pseudomagnanimous gesture. An option is but " 'a right of election to exercise a privilege' " [Sunray DX Oil Co. v. Lewis, Mo., 426 S.W.2d 44, 49(9); Thacker v. Flottmann, Mo., 244 S.W.2d 1020, 1022(3); Lively v. Tabor, 341 Mo. 352, 361, 107 S.W.2d 62, 66(6), 111 A.L.R. 976; Bradley v. Hill, Mo.App., 457 S.W.2d 212, 217 (note 11)]—"no more than a continuing offer on the part of the optionor to sell . . . and not binding upon or enforceable against the optionee unless and until he elects to exercise his option." Mohawk Real Estate Sales, Inc. v. Crecelius, Mo.App., 424 S.W.2d 86, 90(2). See State ex rel. State Highway Com'n. v. Howald, Mo., 315 S.W.2d 786, 790–791(10); Ragan v. Schreffler, Mo., 306 S. W.2d 494, 498(7). For an option, a continuing offer, to bloom into a contract the option must be accepted [Wynn v. McMahon Ford Co., Mo.App., 414 S.W.2d

330, 335(1)], and the acceptance must be unequivocal. Cottonseed Delinting Corp. v. Roberts Bros., Mo., 218 S.W.2d 592, 594(1); Thacker v. Massman Const. Co., Mo., 247 S.W.2d 623, 629(8); Bennett v. Tower Grove Bank & Trust Co., Mo.App., 325 S.W.2d 42, 47(3); Ragsdale v. Tom-Boy, Inc., Mo.App., 317 S.W.2d 679, 685(1). Even as "no man can make himself the creditor of another by any act of his own unsolicited and purely officious" [Watkins, Adm'x. v. Richmond College Trustees, 41 Mo. 302, 309; Cook v. Branine, 341 Mo. 273, 280, 107 S.W.2d 28, 32; Meyer v. Schaub, 364 Mo. 711, 721, 266 S. W.2d 620, 625], instant plaintiffs could not bring into being a contract for sale of their ranch by substituting their gratuitous and then undisclosed entry of fictitious credits to defendant's account for the essential prerequisite of her voluntary and unequivocal acceptance of the option in the manner provided by exhibit 2. We conclude that defendant did not exercise her option to buy plaintiffs' ranch.

■ *Of complaint (b).* The other alleged error is "in ordering the appellants [plaintiffs] to repay $10,000 received as down payment on a sale price of $166,000." The short, simple and sufficient answer to this complaint is that since, as we have found, defendant did not exercise her option to buy and there was no sale, the $10,000 obligation transferred to plaintiffs, admittedly the equivalent of $10,000 in cash, was not "$10,000 received as down payment on a sale price of $166,000." The principal instrument, exhibit 2, declared that "Lessor [plaintiffs] has accepted this $10,000 obligation as payment in guaranteeing Lessee [defendant] will keep the above agreement and make the payments as stated." Defendant's option to buy the ranch not having been exercised, she never activated and stepped onto the 23-year purchase treadmill of $1,043.41 monthly payments, and the only payments "guaranteed" by transfer of the $10,000 obligation to Lessor were rentals accruing under the lease.

Although exhibit 2 specifically required five monthly payments of $500 each on stated dates, there was no provision thereafter terminating the lease or the lessor-lessee relationship of the parties in the event defendant lessee's option to purchase the ranch was not exercised. However, upon trial plaintiff E. L. Keith testified that the "reasonable rental value" of the ranch was $750 per month and that he sought to recover rental on that basis in the aggregate sum of $9,000 for a period of twelve months from and after July 1, 1970; and, in the trial court's judgment, defendant was charged accordingly.

■ In the argument section of their reply brief, plaintiffs-appellants interpose for the first time an assortment of complaints concerning the allowance or amount of some of the items charged against plaintiffs. V.A.M.R. Rules 84.04(a) and (d) [formerly Rules 83.05(a) and (e)] plainly require that an appellant's original brief *"shall contain . . . [t]he points relied upon"* which *"shall state* briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citation of authorities thereunder." We have hereinbefore reviewed and ruled the two complaints which appellants undertook to present, albeit insufficiently, in the single bifurcated point in their original brief. Our appellate courts have held repeatedly that complaints first advanced *either* in the argument section of an original brief [Hastings v. Coppage, Mo., 411 S.W.2d 232, 235(4); Frager v. Glick, Mo., 347 S.

W.2d 385, 391(5); Bishop v. Goldschmidt, Mo.App., 436 S.W.2d 47, 51(6); Haughton Elevator Co. v. C. Rallo Contracting Co., Mo.App., 395 S.W.2d 238, 246(13)] *or in the reply brief* [Page v. Metropolitan St. Louis Sewer District, Mo., 377 S.W.2d 348, 354(9); Edwards v. Durham, Mo., 346 S.W.2d 90, 98(3); Magenheim v. Board of Education of School Dist. of Riverview Gardens, Mo., 340 S.W.2d 619, 621(4); Denney v. Spot Martin, Inc., Mo.App., 328 S.W.2d 399, 405(6, 7); State ex rel. Joslin v. School Dist. No. 7 of Jasper County, Mo.App., 302 S.W.2d 497, 500–501(7, 8)] are not properly presented and will not be ruled.

■ Instant plaintiffs-appellants have not invoked the exercise of our discretionary power under V.A.M.R. Rule 79.04 to review the complaints in their reply brief. And we need not rely upon or adopt the specific finding of the trial court that defendant Tucker "was a female person without knowledge, skill, or experience in the preparation of contracts and was overreached by the plaintiff E. L. Keith in her business dealings with him" to declare confidently and positively, as we do, that the record brought to us in no wise indicates or suggests that our failure, sua sponte, to review those complaints would work manifest injustice or a miscarriage of justice. In these circumstances, we do not review.

The judgment nisi should be and is affirmed.

TITUS, C. J., and HOGAN, J., concur.